ACCEPTED
03-14-00397-CV
3783530
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/15/2015 2:05:58 PM
JEFFREY D. KYLE
CLERK

## No. 03-14-00397-CV

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/15/2015 2:05:58 PM
JEFFREY D. KYLE
Clerk

## American Multi-Cinema, Inc.,

Appellant/Cross-Appellee,

v.

## Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas,

Appellees/Cross-Appellants.

On Appeal from the 200th Judicial District Court
Travis County, Texas

# Cross-Appellants' Reply Brief

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ROBERT O'KEEFE
Division Chief
Financial Litigation, Tax, and
Charitable Trusts Division

CHARLES K. ELDRED
State Bar No. 00793681
Assistant Attorney General
Financial Litigation, Tax, and
Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
512-475-1743
512-477-2348 (fax)
charles.eldred@texasattorneygeneral.gov

Attorneys for Cross-Appellants

# Oral Argument Requested

# Table of Contents

Index of Authorities ............................................................................................ ii

Argument ............................................................................................................ 1

1.  AMC sells a license when it exhibits movies. A license is intangible property, which is excluded from the definition of goods. Therefore, the district court erred by finding that AMC sells "goods" when it exhibits movies. ........................................................................................... 3

2.  A movie experience, whether characterized as ideas, images, sounds, memories, or otherwise, is not property. Therefore, it is not a "good" under the franchise tax. ............................................................................ 4

3.  AMC's movie exhibitions are also services, and therefore not "goods" under the franchise tax. ....................................................................... 6

4.  The district court correctly found that AMC does not produce "goods" defined by Tex. Tax Code §171.1012(a)(3)(A)(ii) for sale. ..................... 7

5.  The 2007 amendment has no effect on the resolution of this appeal. ............. 9

6.  The 2013 amendment has no effect on the resolution of this appeal. .......... 10

7.  The evidence is legally insufficient to support the trial court's finding that AMC is entitled to include its exhibition costs in its cost-of-goods-sold deduction. ............................................................................ 15

Conclusion ......................................................................................................... 17

Certificate of Compliance ................................................................................. 18

Certificate of Service ......................................................................................... 18

# Index of Authorities

## Cases

*Calvert v. General Asphalt Co.,*
    409 S.W.2d 935 (Tex. Civ. App.—Austin 1966, no writ) ..................... 11, 12

*Combs v. Newpark Res., Inc.,*
    422 S.W.3d 46 (Tex. App.—Austin 2013, no pet.) ......................................... 6

*Public Utility Comm'n of Texas v. City of Harlingen,*
    311 S.W.3d 610 (Tex. App.—Austin 2010, no pet.) ............................ 14, 15

*Rowan Oil Co. v. Texas Employment Comm'n,*
    152 Tex. 607, 263 S.W.2d 140 (1953) ......................................................... 11

*State v. Fidelity and Deposit Co. of Maryland,*
    223 S.W.3d 309 (Tex. 2007) ................................................................. 11, 13

*Strayhorn v. Willow Creek Res., Inc.,*
    161 S.W.3d 716 (Tex. App.—Austin 2005, no pet.) ................................... 12

*Texas Health Ins. Risk Pool v. Southwest Service Life Ins. Co.,*
    272 S.W.3d 797 (Tex. App.—Austin 2008, no pet.) ................................... 13

*Tijerina v. City of Tyler,*
    846 S.W.2d 825 (Tex. 1992) ....................................................................... 12

*Waste Management of Texas, Inc. v. Texas Disposal Systems Landfill, Inc.,*
    2012 WL 1810215 (Tex. App.—Austin May 18, 2012), *aff'd in part,*
    *rev'd in part on other grounds,* 434 S.W.3d 142 (Tex. 2014) ............... 13, 14

*Williamson Pointe Venture v. City of Austin,*
    912 S.W.2d 340 (Tex. App.—Austin 1995, no writ) ........................... 12, 13

**Statutes**

TEX. TAX CODE §171.1012 ............................................................................. *passim*

TEX. TAX CODE §171.1012(a) .................................................................................. 2

TEX. TAX CODE §171.1012(a)(3)(A)(i) ............................................................ 2, 4, 5, 6, 7

TEX. TAX CODE §171.1012(a)(3)(A)(ii) ............................................................... 2, 7, 8, 9

TEX. TAX CODE §171.1012(a)(3)(A)(iii) ..................................................................... 2

TEX. TAX CODE §171.1012(a)(3)(B)(i) ....................................................................... 2

TEX. TAX CODE §171.1012(a)(3)(B)(ii) ...................................................................... 2

TEX. TAX CODE §171.1012(c) ................................................................................... 2

**Other Authorities**

Act of May 26, 2007, 80th Leg., R.S., ch, 1282, § 14, 2007 Tex. Gen. Laws
4282 (codified as Tex. Tax Code § 171.1012(a)(3)(A)(ii) ........................... 10

Act of May 27, 2013, 83rd Leg., R.S., ch, 1232, § 10, 2013 Tex. Gen. Laws
3104 (codified as Tex. Tax Code § 171.1012(t)) ................. 10, 11, 12, 13, 15

# In the Court of Appeals
## for the Third Judicial District
## Austin, Texas

**American Multi-Cinema, Inc.,**

Appellant/Cross-Appellee,

v.

**Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas,**

Appellees/Cross-Appellants.

On Appeal from the 200th Judicial District Court
Travis County, Texas

# Cross-Appellants' Reply Brief

TO THE HONORABLE THIRD COURT OF APPEALS:

The question in this appeal is whether AMC sells goods when it exhibits a movie. The answer is no. Because a movie-goer does not own any good as a result of watching a movie, it necessarily follows that AMC does not sell its movie-goers goods when it exhibits a movie. Consequently, the trial court erred by ruling that AMC may include its exhibition costs (such as the costs of renting films from studies and the costs of operating auditoriums) in its cost-of-goods-sold deduction.

The undisputed material facts of this appeal are simple and common knowledge. The question is how the franchise tax applies to those facts. The cost of goods sold includes all direct costs of acquiring or producing the goods. TEX. TAX CODE § 171.1012(c) (West 2008). "Goods" means real or tangible personal property sold in the ordinary course of business of a taxable entity. TEX. TAX CODE § 171.1012(a). The franchise tax defines "tangible personal property" as:

- personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner (§ 171.1012(a)(3)(A)(i));

- films, sound recordings, videotapes, live and prerecorded television and radio programs, books, and other similar property embodying words, ideas, concepts, images, or sound, without regard to the means or methods of distribution or the medium in which the property is embodied, for which, as costs are incurred in producing the property, it is intended or is reasonably likely that any medium in which the property is embodied will be mass-distributed by the creator or any one or more third parties in a form that is not substantially altered (§ 171.1012(a)(3)(A)(ii)); and

- computer programs (§ 171.1012(a)(3)(A)(iii)).

  But "tangible personal property" does not include:

- services (§ 171.1012(a)(3)(B)(i)); or

- intangible property (§ 171.1012(a)(3)(B)(ii)).

For franchise tax purposes, AMC's movie exhibitions can be characterized in many ways. But there is no characterization under which AMC produces goods for sale when it exhibits movies. The Court should reverse the district court's cost-of-goods-sold ruling and render a judgment in favor of the Comptroller.

**1. AMC sells a license when it exhibits movies. A license is intangible property, which is excluded from the definition of goods. Therefore, the district court erred by finding that AMC sells "goods" when it exhibits movies.**

Other than concessions, the only thing that movie-goers purchase, and thus the only thing that AMC sells, is a revocable license to view a movie at a particular time and place. The license allows a movie-goer entry into an auditorium while the movie is playing. It is illegal for someone to be in an AMC auditorium at a time and place other than the time and place on the movie ticket. A license is intangible property, and therefore not a good under the franchise tax. Because AMC's product for sale is a license, AMC may not include exhibition costs in its cost-of-goods-sold deduction.

AMC does not disagree that a license is intangible property. Cross-Appellee's brief at 25. Instead, AMC argues that its customers purchase both a license to be in the auditorium to watch the movie *and* the movie experience itself. "AMC's customers purchase movie tickets that tell AMC theatre operators that the customers are permitted to be on the property to consume the film's sight and sound at a particular time. Nevertheless, the customers are purchasing the sight and sound, not permission to enter the theatre." Cross-Appellee's Brief at 26-27 (citation to record omitted). AMC compares its customers to people buying tickets to a

food and wine festival. The ticket allows them both to attend the festival and to consume food and wine at the festival. Cross-Appellee's Brief at 26.

But this comparison either supports the Comptroller's position or is inapt. If the festival-goers purchase food and wine separately from the ticket, then the festival ticket is merely a license to attend the festival, just as a movie ticket is a license to attend a movie exhibition. If the festival ticket includes a certain amount of food and wine in the purchase price, then the festival-goer is buying food and wine, which are goods under the franchise tax ("personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner." Tex. Tax Code § 171.1012(a)(3)(A)(i). In contrast, a movie experience is not property at all. See *infra* part 2. If a movie-goer is characterized as purchasing both a license to be present in an auditorium at a certain time and a movie experience, then the movie-goer is purchasing (and AMC is selling) intangible property (the license) and non-property (the experience). Neither are "goods" under the franchise tax, so AMC's exhibition costs are not cost-of-goods-sold.

2. **A movie experience, whether characterized as ideas, images, sounds, memories, or otherwise, is not property. Therefore, it is not a "good" under the franchise tax.**

A movie experience, like other life experiences, is not property. Property is separate from the person. Experiences are *part* of the person. More to the point, experiences are not tangible personal property or goods under the franchise tax,

and selling an experience is not selling personal property. Just as thrill-ride operators and symphonies sell experiences that can be detected with the senses but are not goods or personal property, AMC sells an experience that can be detected with the senses but is not personal property. Consequently, if AMC's business is characterized as selling a movie experience, it is not selling "*personal property* that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner [emphasis added]." Tex. Tax Code § 171.1012(a)(3)(A)(i). The district court erred in finding otherwise.

AMC argues that its movie experience is "necessarily owned for a limited period of time before it is consumed." Cross-Appellee's Brief at 31. But of course there never is a time delay or "limited period of time" between the picture appearing on the screen and the customer experiencing the movie in the seat. A movie experience is *not* "owned for a limited period of time before it is consumed." If it were, then a person could exercise property rights over it (such as transferring or selling it to someone else, or taking it home) during that limited time period of ownership before consumption. But of course that is impossible. The movie experience immediately becomes part of the person—like other experiences.

AMC disagrees with the Comptroller's assertion that AMC sells memories. Instead, AMC argues that memories are just a side effect of the movie experience. "[T]hough AMC's customers may leave its theatres with memories of the film,

AMC's products are not memories or other such metaphysical attributes." Cross-Appellee's Brief at 27. But whether or not AMC sells memories, neither memories nor movie experiences are personal property, and thus they are not "goods" under Tex. Tax Code § 171.1012(a)(3)(A)(i).

Furthermore, if a movie-exhibition service can be characterized as an experience which is also personal property, then that violates the statutory exclusion of services from the definition of personal property because every service is experienced. That cannot be right.

## 3. AMC movie exhibitions are also services, and therefore not "goods" under the franchise tax.

As the Comptroller explained in its Brief, AMC could also be said to sell a service when it sells movie tickets. Services are excluded from the definition of "goods" in the franchise tax statute. "Services" means "the performance of work commanded or paid for by another" or "useful labor that does not produce a tangible commodity." *Combs v. Newpark Res., Inc.*, 422 S.W.3d 46, 54 n.8 (Tex. App.—Austin 2013, no pet.). Those definitions perfectly fit movie exhibition. It takes work to exhibit a movie, and AMC described this work in great detail at trial. 1.SRR.37–66 (March 5, 2014 trial) (testimony of Robert Huerta). And the exhibition of a movie does not produce a tangible commodity. Instead, as AMC acknowledges, it produces "images and sounds stored in [the] brain." Cross-Appellee's Brief at 26 n. 10.

AMC's only response to this argument is that its witnesses testified that AMC does not sell services. Cross-Appellee's Brief at 6, 34. But this testimony is merely a legal argument about the legal issue—not evidence. The Court makes the legal determination of whether the statute is satisfied, not the witnesses.

**4.    The district court correctly found that AMC does not produce "goods" defined by Tex. Tax Code §171.1012(a)(3)(A)(ii) for sale.**

In addition to arguing that it produces "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner" for sale under Tex. Tax Code § 171.1012(a)(3)(A)(i), AMC also argued that it produces property described by Tex. Tax Code § 171.1012(a)(3)(A)(ii) for sale. CR.6 at ¶11 (original petition for Report Year 2008, alleging that AMC produces films for sale); 2.SCR.5 at ¶11 (same for Report Year 2009); CR.68, 74–77 (AMC's trial brief). AMC requested that the district court make the following conclusion of law: "When AMC's customers purchase movie tickets and experience the content of a film, they buy 'tangible personal property' as defined in Tax Code § 171.1012(a)(3)(A)(ii)." CR.464. But the district court failed to include either a finding of fact or a conclusion of law showing that AMC prevailed on its theory under § 171.1012(a)(3)(A)(ii). 2.SCR.30. Nonetheless, on appeal, AMC argues that § 171.1012(a)(3)(A)(ii) is an alternative basis to uphold the judgment below. Cross-Appellee's Brief at 13-14.

In fact, AMC does not produce "goods" under § 171.1012(a)(3)(A)(ii) for sale. That subsection applies to producers and creators of films that are intended to be mass-distributed. Film-makers may deduct the cost of making those films as costs of goods sold. But AMC does not make films. AMC exhibits films that others have made. AMC does not make § 171.1012(a)(3)(A)(ii) goods.

Tex. Tax Code § 171.1012(a)(3)(A)(ii) defines the following as tangible personal property (and therefore "goods"):

> films, sound recordings, videotapes, live and prerecorded television and radio programs, books, and other similar property embodying words, ideas, concepts, images, or sound, without regard to the means or methods of distribution or the medium in which the property is embodied, for which, as costs are incurred in producing the property, it is intended or is reasonably likely that any medium in which the property is embodied will be mass-distributed by the creator or any one or more third parties in a form that is not substantially altered

Thus, for AMC to take advantage of this provision, it must produce the following for sale:

(1) films

(2) without regard to the means or methods of distribution or the medium in which the films are embodied

(3) as costs are incurred in producing the films, it is intended or is reasonably likely that any medium in which the films are embodied will be mass-distributed

(4) in a form that is not substantially altered

This allows a movie-maker who makes a movie in Texas to include the costs of making the movie in its cost-of-goods-sold, no matter if the movie is to be shown in theaters, on television, on DVD or Blu-ray, on an internet streaming service, or any other distribution channel.

In contrast to a movie-maker or producer, AMC does not produce "goods" under § 171.1012(a)(3)(A)(ii). AMC does not produce films at all. AMC exhibits films that others have produced or created. The films are embodied in 35-millimeter celluloid film, which AMC rents from film distributors and does not sell. AMC does not distribute 35-millimeter films; to the contrary, it is the end-user. It occupies a different place in the movie business than movie-makers. It receives (1) films (2) in 35-millimeter format (3) that have been mass-distributed (4) in a form that AMC may not alter (as explained in Cross-Appellants' Brief at 3). The film is a finished product before AMC rents and exhibits it. Tex. Tax Code § 171.1012(a)(3)(A)(ii) simply does not apply to movie exhibition.

**5.    The 2007 amendment has no effect on the resolution of this appeal.**

AMC argues that a 2007 amendment to the franchise tax statute means that "the films sold by movie theatres [are] to be treated as 'tangible personal property' for the purposes of [cost of goods sold]." Cross-Appellee's Brief at 17. But, again, AMC does not sell movies, so even if it describes the amendment correctly, the amendment does not help its argument.

But in fact the amendment has nothing to do with this case. The amendment crossed out some language and added some language (in bold below), thus:

> films, sound recordings, videotapes, **live and prerecorded television and radio programs**, books, and other similar property embodying words, ideas, concepts, images, or sound, **without regard to the means or methods of distribution or the medium in which the property is embodied,** [by the creator of the property] for which, as costs are incurred in producing the property, it is intended or is reasonably likely that any [tangible] medium in which the property is embodied will be mass-distributed by the creator or any one or more third parties in a form that is not substantially altered. [Act of May 26, 2007, 80th Leg., R.S., ch. 1282, § 14, 2007 Tex. Gen. Laws 4282, 4290 (App. 1).]

The changes mean that (1) makers of TV and radio shows are included in the list of those who may take advantage of this provision, and (2) movie-makers may include their costs of making movies as costs of goods sold no matter the medium in which the movie is embodied. Neither of the changes have anything to do with movie exhibition.

## 6.  The 2013 amendment has no effect on the resolution of this appeal.

On September 1, 2013, Section 10 of House Bill 500 became effective, adding subsection (t) to the cost-of-goods-sold statute. Subsection (t) defines a movie theater's cost of goods sold as "costs described by this section in relation to the acquisition, production, exhibition, or use of a film or motion picture, including expenses for the right to use the film or motion picture." Act of May 27, 2013, 83rd Leg., R.S., ch. 1232, § 10, 2013 Tex. Gen. Laws 3104, 3108 (App. 2).] Section

10(b) of HB 500 states, "Section 171.1012(t), Tax Code, as added by this section, is a clarification of existing law and does not imply that existing law may be construed as inconsistent with the law as amended by this section." *Id.*

AMC argues that this amendment allows AMC to include its exhibition costs in its cost-of-goods-sold deduction for 2008 and 2009, before the date of this amendment. But AMC is mistaken. The law is not retroactive. It does not purport to amend the governing statute, and purports to permit but not impose any interpretation on the governing statute. Thus, Section 10(b) is not an unconstitutional retroactive law, prohibited by Article 1, Section 16 of the Texas Constitution. "A statute is presumed to be prospective in its operation unless expressly made retrospective." *State v. Fidelity and Deposit Co. of Maryland*, 223 S.W.3d 309, 311 (Tex. 2007). Section 10(b) does not expressly state that new subsection (t) is retroactive.

Furthermore, by its own terms, H.B. 500 became effective on September 1, 2013 and is to be applied prospectively. "An Act of the Legislature is not operative as notice of its provisions until it becomes effective as a law. It performs no function whatsoever until its effective date." *Calvert v. General Asphalt Co.*, 409 S.W.2d 935, 938 (Tex. Civ. App.—Austin 1966, no writ).

Finally, one legislature may not declare the intent of a past session. *Rowan Oil Co. v. Texas Employment Comm'n*, 152 Tex. 607, 263 S.W.2d 140, 144 (1953);

*General Asphalt Co.*, 409 S.W.2d at 937 ("[O]ne legislature is without authority to construe former enactments of other legislatures."); *Strayhorn v. Willow Creek Res., Inc.*, 161 S.W.3d 716, 722 (Tex. App.—Austin 2005, no pet.) ("[T]he intent or understanding of the 78th Legislature offers no insight into the intent of previous legislatures.").

However, "[o]ne legislature's interpretation of a prior legislature's enactment may be persuasive but does not control the interpretation of a prior act. And, if the later legislation differs significantly from existing law, the later legislation changes rather than clarifies existing law [internal citation omitted]." *Williamson Pointe Venture v. City of Austin*, 912 S.W.2d 340, 345 (Tex. App.—Austin 1995, no writ); *accord Tijerina v. City of Tyler*, 846 S.W.2d 825, 828 (Tex. 1992) ("Without any explanation or support from the words of the statute or its legislative history, the City argues that this amendment is a 'clarification' of prior versions rather than a change in their substance … [However,] [t]o read the limitation imposed by the 1987 amendments into this definition would directly contradict the plain meaning of the prior statutes.")

The new subsection (t) changes existing law significantly. The current definition does not allow movie theaters to include movie exhibition costs in their cost-of-goods-sold deduction. The new statute changes the definition of cost of goods sold by creating a new tax exemption for movie theaters. That makes it a substan-

tive change, rather than a clarification, the language of Section 10(b) notwithstanding.

In *Williamson Pointe Venture*, the Third Court of Appeals called the later-enacted statute "a broad change rather than a clarification," noting that it changed two definitions and added "a whole section of exclusions to the arguably broader statute." *Id.* at 345. This is consistent with the Texas Supreme Court's holding that changes to definitions are prospective only. *Fidelity and Deposit Co. of Maryland*, 223 S.W.3d at 311-12. Similarly, subsection (t) changes the definition of cost of goods sold and adds a specific franchise tax deduction for movie theaters that was not in the previous law.

The Court has rejected other arguments that a later-enacted statute merely clarified, as opposed to changed, a prior-enacted statute. *Williamson Pointe Venture, supra*; *Texas Health Ins. Risk Pool v. Southwest Service Life Ins. Co.*, 272 S.W.3d 797, 805 (Tex. App.—Austin 2008, no pet.) ("Because the amended statute differs significantly from the law as it existed in 2006, we conclude that the 2007 amendments served to change, rather than clarify, the existing law"); *Waste Management of Texas, Inc. v. Texas Disposal Systems Landfill, Inc.*, 2012 WL 1810215, 30 (Tex. App.—Austin May 18, 2012), *aff'd in part, rev'd in part on other grounds*, 434 S.W.3d 142 (Tex. 2014) (noting that if later legislation differs

significantly from existing law, that later legislation changes rather than clarifies existing law).

AMC relies on *Public Utility Comm'n of Texas v. City of Harlingen*, 311 S.W.3d 610 (Tex. App.—Austin 2010, no pet.), Cross-Appellee's Brief at 21–22, but its reliance is misplaced. In that case, the Court held that the Public Utility Regulatory Act ("PURA") granted the Public Utility Commission statutory authority to grant a certificate of convenience and necessity ("CCN") to a transmission-only utility, based on a number of reasons:

- First, "The applicable definitions in the PURA contemplate that a utility may be a transmission-only utility." *Id.* at 617.

- Second, "[S]ection 39.051 specifically provides that the electric utility 'may create separate transmission and distribution utilities.'" *Id.* at 617 n.4.

- Third, "Based on the plain language of sections 37.056 and 37.154, each of which provides the Commission authority to approve a utility's receipt of a CCN, the Commission has been given the power to approve a CCN for a utility that provides only transmission services, provided that such services meet the applicable standards." *Id.* at 617.

- Fourth, "[T]here are circumstances in which transmission-only utilities are specifically provided for by statute." *Id.* at 618 n.5.

- Fifth and sixth, in response to two different statutory arguments that "because a transmission-only utility, unlike one that also provides distribution services, would generally not have a defined geographic area to which it provided service, such a utility cannot obtain a CCN", the Third Court of Appeals responded that "section 37.151 does not require a transmission-only utility to have a service area" and "section 37.056 does not support [the] position that a transmission-only utility cannot be certified without a defined service area." *Id.* at 619.

After making all these points, the Court stated that it would not consider the parties' policy arguments "because the Texas Legislature has spoken to the issue by enacting House Bill 3309 during the 2009 regular session [and] has clarified, therefore, that an electric utility intending to operate a facility that is part of the transmission system serving the ERCOT power region may obtain a CCN even if the utility will provide only transmission services and will not satisfy section 37.151's certificated-area-related requirements." *Public Utility Com'n of Texas v. City of Harlingen*, 311 S.W.3d at 620.

Thus, the opinion only supports that position that a later-enacted law can moot policy arguments. The case did not rely on any language from the later-enacted law to interpret the earlier-enacted law.

In sum, H.B. 500 changed the law starting on September 1, 2013, and does not apply to this case, which concerns 2008 and 2009.

7. **The evidence is legally insufficient to support the trial court's finding that AMC is entitled to include its exhibition costs in its cost-of-goods-sold deduction.**

As argued in the Comptroller's Cross-Appellants' Brief, AMC does not acquire or produce goods for sale when it exhibits a movie. It sells either (1) a license to watch a movie, which is intangible property, or (2) experiences and memories, which are not goods, or (3) a service. In all three cases, it is not entitled to include

its exhibition costs in its cost-of-goods-sold deduction. Consequently, the evidence is legally insufficient to support the trial court's finding of fact no. 4:

> When AMC exhibits movies and other content to its paying customers, it produces personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner for sale in its ordinary course of business. SCR.30.

For the same reason, the Court should reverse trial court's conclusion of law no. 2:

> When AMC exhibits movies and other content to its paying customers, AMC produces goods for sale in ordinary course of business under Section 171.1012, and may therefore include the costs of exhibiting movies and other content to its paying customers in its cost-of-goods-sold deduction under Section 171.1012 of the Texas Tax Code. SCR.30.

No evidence supports finding of fact no. 4. There is a complete absence of evidence that AMC acquires, produces, or sells "goods" when it exhibits movies. In fact, the evidence conclusively establishes the opposite of that vital fact—specifically, it establishes that AMC sells intangible property, non-property, or services, all of which are excluded from the statutory definition of "goods."

Because conclusion of law no. 2 rests entirely on the trial court's determination of finding of fact no. 4, there is no evidence to support conclusion of law no. 2. The Court should reverse the trial court's finding of fact no. 4 and conclusion of law no. 2 and render judgment that AMC take nothing.

# Conclusion

This Court should reverse the trial court and render a judgment that AMC's exhibition costs may not be included in its cost-of-goods-sold deduction and that AMC take nothing by this suit.

Respectfully submitted,

KEN PAXTON
Attorney General

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ROBERT O'KEEFE
Division Chief
Financial Litigation, Tax, and
Charitable Trusts Division

CHARLES K. ELDRED
Attorney in Charge
Financial Litigation, Tax, and
Charitable Trusts Division
State Bar No. 00793681
P.O. Box 12548
Austin, Texas 78711-2548
512-475-1743
512-477-2348 (fax)
charles.eldred@texasattorneygeneral.gov

Attorneys for Appellants

## Certificate of Compliance

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 3,830 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

Charles K. Eldred
Assistant Attorney General

## Certificate of Service

I certify that a copy of this *Cross-Appellants' Reply Brief* was served by email and eservice to Doug Sigel, attorney for Appellee, on January 15, 2015 to doug.sigel@ryanlawllp.com.

Charles K. Eldred
Assistant Attorney General

# Appendix 1

Act of May 26, 2007, 80th Leg., R.S., ch. 1282,

§ 14, 2007 Tex. Gen. Laws 4282

*Legislative Budget Board, Legislative Audit Committee, state auditor, and Texas Higher Education Coordinating Board a report including:*

*(1) the fiscal transactions of the board and the plan manager under this subchapter during the preceding fiscal year;*

*(2) the market and book value of the fund as of the end of the preceding fiscal year;*

*(3) the asset allocations of the fund expressed in percentages of stocks, fixed income, cash, or other financial investments;*

*(4) the rate of return on the investment of the fund's assets during the preceding fiscal year; and*

*(5) an actuarial valuation of the assets and liabilities of the program, including the extent to which the program's liabilities are unfunded.*

*(b) The board shall make the report described by Subsection (a) available to purchasers of prepaid tuition contracts.*

*(c) Not later than December 1 of each year, the board shall provide to the coordinating board complete prepaid tuition contract sales information, including projected enrollments of beneficiaries at general academic teaching institutions and two-year institutions of higher education.*

*Sec. 54.778.   AUDIT.   The fund and the operations of the board are subject to audit by the state auditor in accordance with Chapter 321, Government Code.*

SECTION 2.   Beginning September 1, 2008, the Prepaid Higher Education Tuition Board may enter into prepaid tuition contracts with purchasers and begin selling tuition units under those contracts in accordance with Subchapter H, Chapter 54, Education Code, as added by this Act.

SECTION 3.   This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution.   If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2007.

Passed by the House on May 1, 2007: Yeas 145, Nays 0, 1 present, not voting;  the House concurred in Senate amendments to H.B. No. 3900 on May 21, 2007:  Yeas 141, Nays 0, 2 present, not voting;  passed by the Senate, with amendments, on May 17, 2007:  Yeas 31, Nays 0.

Approved June 15, 2007.

Effective June 15, 2007.

---

# CHAPTER 1282

## H.B. No. 3928

### AN ACT

relating to technical changes to the revised franchise tax.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1.   Section 171.0001, Tax Code, as effective January 1, 2008, is amended by amending Subdivisions (6), (8), (9), (10), (15), and (17) and adding Subdivisions (11-a) and (13-a) to read as follows:

(6) "Client company" *means:*

*(A) a person that contracts with a license holder under Chapter 91* [has the meaning assigned by Section 91.001], *Labor Code, and is assigned employees by the license holder under that contract;  or*

*(B) a client of a temporary employment service, as that term is defined by Section 93.001(2), Labor Code, to whom individuals are assigned for a purpose described by that subdivision.*

(8) "Controlling interest" means:

(A) for a corporation, either *more than 50* [80] percent [or more], owned directly or indirectly, of the total combined voting power of all classes of stock of the corporation, or *more than 50* [80] percent [or more], owned directly or indirectly, of the beneficial ownership interest in the voting stock of the corporation; [and]

(B) for a partnership, association, trust, or other entity *other than a limited liability company, more than 50* [80] percent [or more], owned directly or indirectly, of the capital, profits, or beneficial interest in the partnership, association, trust, or other entity; *and*

*(C) for a limited liability company, either more than 50 percent, owned directly or indirectly, of the total membership interest of the limited liability company or more than 50 percent, owned directly or indirectly, of the beneficial ownership interest in the membership interest of the limited liability company.*

(9) "Internal Revenue Code" means the Internal Revenue Code of 1986 in effect for the federal tax year beginning on January 1, *2007* [2006], *not including any changes made by federal law after that date,* and any regulations adopted under that code applicable to that period.

(10) "Lending institution" means an entity that makes loans and:

*(A)* is regulated by the Federal Reserve Board, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, *the Commodity Futures Trading Commission, the Office of Thrift Supervision,* the Texas Department of Banking, the Office of Consumer Credit Commissioner, [the Department of Savings and Mortgage Lending,] the Credit Union Department, or any comparable regulatory body;

*(B) is licensed by, registered with, or otherwise regulated by the Department of Savings and Mortgage Lending;*

*(C) is a "broker" or "dealer" as defined by the Securities Exchange Act of 1934 at 15 U.S.C. Section 78c; or*

*(D) provides financing to unrelated parties solely for agricultural production.*

*(11–a) "Natural person" means a human being or the estate of a human being. The term does not include a purely legal entity given recognition as the possessor of rights, privileges, or responsibilities, such as a corporation, limited liability company, partnership, or trust.*

*(13–a) "Security," for purposes of Sections 171.1011(g), 171.1011(g–2), and 171.106(f) only, has the meaning assigned by Section 475(c)(2), Internal Revenue Code, and includes instruments described by Sections 475(e)(2)(B), (C), and (D) of that code.*

(15) "Staff leasing services company" *means:*

*(A) a business entity that offers staff leasing services, as that term is defined* [has the meaning assigned] by Section 91.001, Labor Code; *or*

*(B) a temporary employment service, as that term is defined by Section 93.001, Labor Code.*

(17) "Unitary business" means a single economic enterprise that is made up of separate parts of a single entity or of a commonly controlled group of entities that are sufficiently interdependent, integrated, and interrelated through their activities so as to provide a synergy and mutual benefit that produces a sharing or exchange of value among them and a significant flow of value to the separate parts. In determining whether a unitary business exists, the comptroller shall consider any relevant factor, including whether:

(A) the activities of the group members[:

[(i)] are in the same general line, such as manufacturing, wholesaling, retailing of tangible personal property, insurance, transportation, or finance; [or]

*(B) the activities of the group members* [(ii)] are steps in a vertically structured enterprise or process, such as the steps involved in the production of natural resources, including exploration, mining, refining, and marketing; *or* [and]

*(C)* [*(B)*] the members are functionally integrated through the exercise of strong centralized management, such as authority over purchasing, financing, product line, personnel, and marketing.

SECTION 2.   Section 171.0002, Tax Code, as effective January 1, 2008, is amended to read as follows:

Sec. 171.0002.   DEFINITION OF TAXABLE ENTITY.   (a) Except as otherwise provided by this section, "taxable entity" means a partnership, *limited liability partnership,* corporation, banking corporation, savings and loan association, limited liability company, business trust, professional association, business association, joint venture, joint stock company, holding company, or other legal entity.   The term includes a combined group.   A joint venture does not include joint operating or co-ownership arrangements meeting the requirements of Treasury Regulation Section 1.761–2(a)(3) that elect out of federal partnership treatment as provided by Section 761(a), Internal Revenue Code.

(b) "Taxable entity" does not include:

(1) a sole proprietorship;

(2) a general partnership:

*(A)* the direct ownership of which is entirely composed of natural persons; *and*

*(B) the liability of which is not limited under a statute of this state or another state, including by registration as a limited liability partnership;*

(3) a passive entity as defined by Section 171.0003; or

(4) an entity that is exempt from taxation under Subchapter B.

(c) "Taxable entity" does not include an entity that is:

(1) a grantor trust as defined by Sections 671 and 7701(a)(30)(E), Internal Revenue Code, all of the grantors and beneficiaries of which are natural persons or charitable entities as described in Section 501(c)(3), Internal Revenue Code, excluding a trust taxable as a business entity pursuant to Treasury Regulation Section 301.7701–4(b);

(2) an estate of a natural person as defined by Section 7701(a)(30)(D), Internal Revenue Code, excluding an estate taxable as a business entity pursuant to Treasury Regulation Section 301.7701–4(b);

(3) an escrow;

(4) [a family limited partnership that is a passive entity in which at least 80 percent of the interests are held, directly or indirectly, by members of the same family, including an individual's ancestors, lineal descendants, spouse, and brothers and sisters by the whole or half-blood, and the estate of any of these persons, and that is a limited partnership:

[(A) formed pursuant to the Texas Revised Limited Partnership Act (Article 6132a–1, Vernon's Texas Civil Statutes);

[(B) formed pursuant to the limited partnership law of any other state; or

[(C) treated as a partnership for federal income tax purposes;

[(5) a passive investment partnership that is a passive entity and that is:

[(A) formed pursuant to the Texas Revised Limited Partnership Act (Article 6132a–1, Vernon's Texas Civil Statutes);

[(B) formed pursuant to the limited partnership law of any other state; or

[(C) formed pursuant to the limited partnership laws of any foreign country;

[(6) a passive investment partnership that is a passive entity and is a general partnership;

[(7) a trust that is a passive entity:

[(A) that is taxable as a trust under Section 641, Internal Revenue Code;

[(B) all of the beneficiaries of which are natural persons or charitable entities as defined in Section 501(c)(3), Internal Revenue Code;

[(C) that is not a trust taxable as a business entity pursuant to Treasury Regulation Section 301.7701–4(b); and

4284

[(D) that is organized as a trust and is described in Section 7701(a)(30)(E), Internal Revenue Code;

[(8)] a real estate investment trust (REIT) as defined by Section 856, Internal Revenue Code, and its "qualified REIT subsidiary" entities as defined by Section 856(i)(2), Internal Revenue Code, provided that:

(A) a REIT with any amount of its assets in direct holdings of real estate, other than real estate it occupies for business purposes, as opposed to holding interests in limited partnerships or other entities that directly hold the real estate, is a taxable entity; and

(B) a limited partnership or other entity that directly holds the real estate as described in Paragraph (A) is not exempt under this subdivision, without regard to whether a REIT holds an interest in it; [or]

(5) [(9)] a real estate mortgage investment conduit (REMIC), as defined by Section 860D, Internal Revenue Code;

(6) a nonprofit self-insurance trust created under Chapter 2212, Insurance Code, or a predecessor statute;

(7) a trust qualified under Section 401(a), Internal Revenue Code; or

(8) a trust or other entity that is exempt under Section 501(c)(9), Internal Revenue Code.

(d) An entity that can file as a sole proprietorship for federal tax purposes is not a sole proprietorship for purposes of Subsection (b)(1) and is not exempt under that subsection if the entity is formed in a manner under the statutes of this state, [or] another state, or a foreign country that limit the liability of the entity.

SECTION 3. Section 171.0003(a), Tax Code, as effective January 1, 2008, is amended to read as follows:

(a) An entity is a passive entity only if:

(1) the entity is a general or limited partnership or a trust, other than a business trust;

(2) during the period on which margin is based, the entity's federal gross income consists of at least 90 percent of the following income:

(A) dividends, interest, foreign currency exchange gain, periodic and nonperiodic payments with respect to notional principal contracts, option premiums, cash settlement or termination payments with respect to a financial instrument, and income from a limited liability company;

(B) distributive shares of partnership income to the extent that those distributive shares of income are greater than zero;

(C) capital gains from the sale of real property, gains from the sale of commodities traded on a commodities exchange, and gains from the sale of securities; and

(D) royalties, bonuses, or delay rental income from mineral properties and income from other nonoperating mineral interests; and

(3) the entity does not receive more than 10 percent of its federal gross income from conducting an active trade or business.

SECTION 4. Section 171.0004(e), Tax Code, as effective January 1, 2008, is amended to read as follows:

(e) For purposes of this section:

(1) the ownership of a royalty interest or a nonoperating working interest in mineral rights does not constitute conduct of an active trade or business; [and]

(2) payment of compensation to employees or independent contractors for financial or legal services reasonably necessary for the operation of the entity does not constitute conduct of an active trade or business; and

(3) holding a seat on the board of directors of an entity does not by itself constitute conduct of an active trade or business.

SECTION 5. Section 171.001, Tax Code, as effective January 1, 2008, is amended by adding Subsection (c) to read as follows:

*(c) The tax imposed under this section or Section 171.0011 is not imposed on an entity if, during the period on which the report is based, the entity qualifies as a passive entity as defined by Section 171.0003.*

SECTION 6.   Sections 171.0011(a) and (b), Tax Code, as effective January 1, 2008, are amended to read as follows:

(a) Except as provided by *Section 171.001(c)* [Subsection (e)], an additional tax is imposed on a taxable entity that for any reason becomes no longer subject to the tax imposed under this chapter.

(b) The additional tax is equal to the appropriate rate under Section 171.002 of the taxable entity's taxable margin computed on the period beginning on the day after the last day for which the tax imposed on taxable margin *or net taxable earned surplus* was computed and ending on the date the taxable entity is no longer subject to the tax imposed under this chapter.

SECTION 7.   Sections 171.002(a), (b), (c), and (d), Tax Code, as effective January 1, 2008, are amended to read as follows:

(a) Subject to *Sections* [Section] 171.003 *and 171.1016* and except as provided by Subsection (b), the rate of the franchise tax is one percent [per year of privilege period] of taxable margin.

(b) *Subject to Sections 171.003 and 171.1016, the* [The] rate of the franchise tax is 0.5 percent [per year of privilege period] of taxable margin for those taxable entities primarily engaged in retail or wholesale trade.

(c) A taxable entity is primarily engaged in retail or wholesale trade only if:

(1) the total revenue from its activities in retail or wholesale trade is greater than the total revenue from its activities in trades other than the retail and wholesale trades;

(2) except as provided by Subsection (c–1), less than 50 percent of the total revenue from activities in retail or wholesale trade comes from the sale of products it produces or products produced by an entity that is part of an affiliated group to which the taxable entity also belongs; and

(3) the taxable entity does not provide retail or wholesale utilities, including telecommunications services, [and] electricity, or gas.

(d) A taxable entity is not required to pay any tax and is not considered to owe any tax for a period if:

(1) the amount of tax computed for the taxable entity is less than $1,000; or

(2) the amount of the taxable entity's total revenue from its entire business is less than or equal to $300,000 or the amount determined under Section 171.006 *per 12–month period on which margin is based.*

SECTION 8.   Subchapter A, Chapter 171, Tax Code, is amended by adding Section 171.0021 to read as follows:

*Sec. 171.0021.   DISCOUNTS FROM TAX LIABILITY FOR SMALL BUSINESSES.   (a) A taxable entity is entitled to a discount of the tax imposed under this chapter that the taxable entity is required to pay after determining its taxable margin under Section 171.101, applying the appropriate rate of the tax under Section 171.002(a) or (b), and subtracting any other allowable credits, as follows:*

*(1) for a taxable entity for which the total revenue from its entire business is greater than $300,000 but less than $400,000, the taxable entity is entitled to a discount of 80 percent;*

*(2) for a taxable entity for which the total revenue from its entire business is equal to or greater than $400,000 but less than $500,000, the taxable entity is entitled to a discount of 60 percent;*

*(3) for a taxable entity for which the total revenue from its entire business is equal to or greater than $500,000 but less than $700,000, the taxable entity is entitled to a discount of 40 percent; and*

*(4) for a taxable entity for which the total revenue from its entire business is equal to or greater than $700,000 but less than $900,000, the taxable entity is entitled to a discount of 20 percent.*

(b) The amounts under Subsection (a) are subject to adjustment as provided by Section 171.006.

SECTION 9. The heading to Section 171.006, Tax Code, as effective January 1, 2008, is amended to read as follows:

Sec. 171.006. ADJUSTMENT OF ELIGIBILITY FOR *NO TAX DUE, DISCOUNTS,* [EXEMPTION] AND COMPENSATION DEDUCTION.

SECTION 10. Section 171.006(b), Tax Code, as effective January 1, 2008, is amended to read as follows:

(b) Beginning in *2010* [2009], on January 1 of each *even-numbered* [odd-numbered] year, the amounts prescribed by Sections 171.002(d)(2), *171.0021,* and 171.1013(c) are increased or decreased by an amount equal to the amount prescribed by those sections on December 31 of the preceding year multiplied by the percentage increase or decrease during the preceding state fiscal biennium in the consumer price index and rounded to the nearest $10,000.

SECTION 11. Section 171.101(d), Tax Code, as effective January 1, 2008, is amended to read as follows:

(d) An election under Subsection (a)(1)(B)(ii) shall be made by the taxable entity on its annual report and is effective only for that annual report. *A taxable entity shall notify the comptroller of its election not later than the due date of the annual* [The election may be changed by filing an amended] report.

SECTION 12. Section 171.1011, Tax Code, as effective January 1, 2008, is amended by amending Subsections (b), (c), (d), (e), (g–3), (h), (n), and (o) and adding Subsections (g–4) and (t) to read as follows:

(b) In this section, a reference to an amount *reportable as income* [entered] on a line number on an Internal Revenue Service form *is the amount entered to the extent the amount entered complies with federal income tax law and* includes the corresponding amount entered on a variant of the form, or a subsequent form, with a different line number *to the extent the amount entered complies with federal income tax law.* [The comptroller shall adopt rules as necessary to accomplish the legislative intent prescribed by this subsection and Subsection (a).]

(c) Except as provided by this section, and subject to Section 171.1014, for the purpose of computing its taxable margin under Section 171.101, the total revenue of a taxable entity is:

(1) for a taxable entity treated for federal income tax purposes as a corporation, an amount computed by:

(A) adding:

(i) the amount *reportable as income* [entered] on line 1c, Internal Revenue Service Form 1120; [and]

(ii) the amounts *reportable as income* [entered] on lines 4 through 10, Internal Revenue Service Form 1120; and

*(iii) any total revenue reported by a lower tier entity as includable in the taxable entity's total revenue under Section 171.1015(b); and*

(B) subtracting:

(i) bad debt expensed for federal income tax purposes that corresponds to items of gross receipts included in Subsection (c)(1)(A) for the current reporting period or a past reporting period;

(ii) to the extent included in Subsection (c)(1)(A), foreign royalties and foreign dividends, including amounts determined under Section 78 or Sections 951–964, Internal Revenue Code;

(iii) to the extent included in Subsection (c)(1)(A), net distributive income from *a taxable entity* [partnerships and from trusts and limited liability companies] treated as *a partnership or* [partnerships for federal income tax purposes and net distributive

4287

income from limited liability companies and corporations treated] as *an S corporation* [corporations] for federal income tax purposes;

(iv) allowable deductions from Internal Revenue Service Form 1120, Schedule C, to the extent the relating dividend income is included in total revenue;

(v) to the extent included in Subsection (c)(1)(A), items of income attributable to an entity that is a disregarded entity for federal income tax purposes; and

(vi) to the extent included in Subsection (c)(1)(A), other amounts authorized by this section;

(2) for a taxable entity treated for federal income tax purposes as a partnership, an amount computed by:

(A) adding:

(i) the amount *reportable as income* [entered] on line 1c, Internal Revenue Service Form 1065;

(ii) the amounts *reportable as income* [entered] on lines 4, *6, and* [through] 7, Internal Revenue Service Form 1065; [and]

(iii) the amounts *reportable as income* [entered] on lines *3a and 5* [2] through 11, Internal Revenue Service Form 1065, Schedule K; [and]

*(iv) the amounts reportable as income on line 17, Internal Revenue Service Form 8825;*

*(v) the amounts reportable as income on line 11, plus line 2 or line 45, Internal Revenue Service Form 1040, Schedule F; and*

*(vi) any total revenue reported by a lower tier entity as includable in the taxable entity's total revenue under Section 171.1015(b); and*

(B) subtracting:

(i) bad debt expensed for federal income tax purposes that corresponds to items of gross receipts included in Subsection (c)(2)(A) for the current reporting period or a past reporting period;

(ii) to the extent included in Subsection (c)(2)(A), foreign royalties and foreign dividends, including amounts determined under Section 78 or Sections 951-964, Internal Revenue Code;

(iii) to the extent included in Subsection (c)(2)(A), net distributive income from *a taxable entity* [partnerships and from trusts and limited liability companies] treated as *a partnership or* [partnerships for federal income tax purposes and net distributive income from limited liability companies and corporations treated] as *an S corporation* [corporations] for federal income tax purposes;

(iv) to the extent included in Subsection (c)(2)(A), items of income attributable to an entity that is a disregarded entity for federal income tax purposes; and

(v) to the extent included in Subsection (c)(2)(A), other amounts authorized by this section; or

(3) for a taxable entity other than a taxable entity treated for federal income tax purposes as a corporation or partnership, an amount determined in a manner substantially equivalent to the amount for Subdivision (1) or (2) determined by rules that the comptroller shall adopt.

(d) Subject to Section 171.1014, a *taxable entity* [corporation] that is part of a federal consolidated group shall compute its total revenue under Subsection (c) as if it had filed a separate return for federal income tax purposes.

(e) A taxable entity that owns an interest in a passive entity [that is not included in a group report under Section 171.1014] shall *exclude from* [include in] the taxable entity's total revenue the taxable entity's share of the net income of the passive entity, but only to the extent the net income of the passive entity was [not] generated by the margin of any other taxable entity.

(g–3) A taxable entity that provides legal services shall exclude from its total revenue[, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3)]:

(1) *to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3),* the following flow-through funds that are mandated by law, contract, or fiduciary duty to be distributed to the claimant by the claimant's attorney or to other entities on behalf of a claimant by the claimant's attorney:

    (A) damages due the claimant;

    (B) funds subject to a lien or other contractual obligation arising out of the representation, other than fees owed to the attorney;

    (C) funds subject to a subrogation interest or other third-party contractual claim; and

    (D) fees paid an attorney in the matter who is not a member, partner, shareholder, or employee of the taxable entity;

(2) *to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3),* reimbursement of the taxable entity's expenses incurred in prosecuting a claimant's matter that are specific to the matter and that are not general operating expenses; and

(3) [the actual out-of-pocket expenses of the attorney, not to exceed] $500 per *pro bono services* case *handled by the attorney,* [of providing pro bono legal services to a person,] but only if the attorney maintains records of the pro bono services for auditing purposes in accordance with the manner in which those services are reported to the State Bar of Texas.

*(g–4) A taxable entity that is a pharmacy cooperative shall exclude from its total revenue, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3), flow-through funds from rebates from pharmacy wholesalers that are distributed to the pharmacy cooperative's shareholders.*

(h) If the taxable entity belongs to an affiliated group, the taxable entity may not exclude payments described by Subsection (f), (g), (g–1), (g–2), [or] (g–3), *or (g–4)* that are made to entities that are members of the affiliated group.

(n) Except as provided by Subsection (o), a taxable entity that is a health care provider shall exclude from its total revenue[, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3)]:

    (1) *to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3),* the total amount of payments the health care provider received:

        (A) under the Medicaid program, Medicare program, Indigent Health Care and Treatment Act (Chapter 61, Health and Safety Code), and Children's Health Insurance Program (CHIP);

        (B) for professional services provided in relation to a workers' compensation claim under Title 5, Labor Code; and

        (C) for professional services provided to a beneficiary rendered under the TRICARE military health system; and

    (2) the actual cost to the health care provider for any uncompensated care provided, but only if the provider maintains records of the uncompensated care for auditing purposes and, if the provider later receives payment for all or part of that care, the provider adjusts the amount excluded for the tax year in which the payment is received.

(o) A health care provider that is a health care institution shall exclude from its total revenue[, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3),] 50 percent of the amounts described by Subsection (n).

*(t) The comptroller shall adopt rules as necessary to accomplish the legislative intent prescribed by this section.*

SECTION 13. Section 171.1011(*l* )(1), Tax Code, as effective January 1, 2008, is amended to read as follows:

    (1) "Sales commission" means:

        (A) any form of compensation paid to a person for engaging in an act for which a license is required by Chapter 1101, Occupations Code; *or* [and]

        (B) compensation paid to a sales representative by a principal in an amount that is based on the amount or level of certain orders for or sales of the principal's product and that the principal is required to report on Internal Revenue Service Form 1099–MISC.

SECTION 14. Section 171.1012(a)(3)(A), Tax Code, as effective January 1, 2008, is amended to read as follows:

(A) "Tangible personal property" means:

(i) personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner;

(ii) films, sound recordings, videotapes, *live and prerecorded television and radio programs,* books, and other similar property embodying words, ideas, concepts, images, or sound, *without regard to the means or methods of distribution or the medium in which the property is embodied,* [by the creator of the property] for which, as costs are incurred in producing the property, it is intended or is reasonably likely that any [tangible] medium in which the property is embodied will be mass-distributed by the creator or any one or more third parties in a form that is not substantially altered; and

(iii) a computer program, as defined by Section 151.0031.

SECTION 15. Section 171.1012, Tax Code, as effective January 1, 2008, is amended by amending Subsections (c), (g), (h), and (k) and adding Subsection (o) to read as follows:

(c) The cost of goods sold includes all direct costs of acquiring or producing the goods, including:

(1) labor costs;

(2) cost of materials that are an integral part of specific property produced;

(3) cost of materials that are consumed in the ordinary course of performing production activities;

(4) handling costs, including costs attributable to processing, assembling, repackaging, and inbound transportation costs;

(5) storage costs, including the costs of carrying, storing, or warehousing property, subject to Subsection (e);

(6) depreciation, depletion, and amortization, *reported on the federal income tax return on which the report under this chapter is based,* to the extent associated with and necessary for the production of goods, including recovery described by Section 197, Internal Revenue Code;

(7) the cost of renting or leasing equipment, facilities, or real property directly used for the production of the goods, including pollution control equipment and intangible drilling and dry hole costs;

(8) the cost of repairing and maintaining equipment, facilities, or real property directly used for the production of the goods, including pollution control devices;

(9) costs attributable to research, experimental, engineering, and design activities directly related to the production of the goods, including all research or experimental expenditures described by Section 174, Internal Revenue Code;

(10) geological and geophysical costs incurred to identify and locate property that has the potential to produce minerals;

(11) taxes paid in relation to acquiring or producing any material, or taxes paid in relation to services that are a direct cost of production;

(12) the cost of producing or acquiring electricity sold; and

(13) a contribution to a partnership in which the taxable entity owns an interest that is used to fund activities, the costs of which would otherwise be treated as cost of goods sold of the partnership, but only to the extent that those costs are related to goods distributed to the taxable entity as goods-in-kind in the ordinary course of production activities rather than being sold.

(g) A taxable entity that is allowed a subtraction by this section for a cost of goods sold and that is subject to Section 263A, 460, or 471, Internal Revenue Code, *may* [shall] capitalize that cost in the same manner and to the same extent that the taxable entity *capitalized that cost on its federal income tax return or may expense those costs* [is required or allowed to capitalize the cost under federal law and regulations], except for costs excluded under

Subsection (e), or in accordance with Subsections (c), (d), and (f). *If the taxable entity elects to capitalize costs, it must capitalize each cost allowed under this section that it capitalized on its federal income tax return. If the taxable entity later elects to begin expensing a cost that may be allowed under this section as a cost of goods sold, the entity may not deduct any cost in ending inventory from a previous report. If the taxable entity elects to expense a cost of goods sold that may be allowed under this section, a cost incurred before the first day of the period on which the report is based may not be subtracted as a cost of goods sold. If the taxable entity elects to expense a cost of goods sold and later elects to capitalize that cost of goods sold, a cost expensed on a previous report may not be capitalized.*

(h) A taxable entity shall determine its cost of goods sold, except as otherwise provided by this section, in accordance with the methods *used on the federal income tax return on which the report under this chapter is based* [permitted by federal statutes and regulations]. This subsection does not affect the type or category of cost of goods sold that may be subtracted under this section.

(k) Notwithstanding any other provision of this section, if the taxable entity is a lending institution that offers loans to the public and elects to subtract cost of goods sold, the entity, *other than an entity primarily engaged in an activity described by category 5932 of the 1987 Standard Industrial Classification Manual published by the federal Office of Management and Budget,* may subtract as a cost of goods sold an amount equal to interest expense. *For purposes of this subsection, an entity engaged in lending to unrelated parties solely for agricultural production offers loans to the public.*

*(o) If a taxable entity, including a taxable entity with respect to which cost of goods sold is determined pursuant to Section 171.1014(e)(1), whose principal business activity is film or television production or broadcasting or the distribution of tangible personal property described by Subsection (a)(3)(A)(ii), or any combination of these activities, elects to subtract cost of goods sold, the cost of goods sold for the taxable entity shall be the costs described in this section in relation to the property and include depreciation, amortization, and other expenses directly related to the acquisition, production, or use of the property, including expenses for the right to broadcast or use the property.*

SECTION 16. Section 171.1013, Tax Code, as effective January 1, 2008, is amended by amending Subsections (a), (b), and (c) and adding Subsection (b–1) to read as follows:

(a) Except as otherwise provided by this section, "wages and cash compensation" means the amount entered in the Medicare wages and tips box of Internal Revenue Service Form W–2 or any subsequent form with a different number or designation that substantially provides the same information. The term also includes, to the extent not included above:

(1) net distributive income from *a taxable entity treated as a partnership* [partnerships and from trusts and limited liability companies treated as partnerships] for federal income tax purposes, but only if the person receiving the distribution is a natural person;

(2) net distributive income from limited liability companies and corporations treated as S corporations for federal income tax purposes, but only if the person receiving the distribution is a natural person; [and]

(3) stock awards and stock options deducted for federal income tax purposes; *and*

*(4) net distributive income from a limited liability company treated as a sole proprietorship for federal income tax purposes, but only if the person receiving the distribution is a natural person.*

(b) Subject to Section 171.1014, a taxable entity that elects to subtract compensation for the purpose of computing its taxable margin under Section 171.101 may subtract an amount equal to:

(1) subject to the limitation in Subsection (c), all wages and cash compensation paid by the taxable entity to its officers, directors, owners, partners, and employees; and

(2) the cost of all benefits, *to the extent deductible for federal income tax purposes,* the taxable entity provides to its officers, directors, owners, partners, and employees, including workers' compensation benefits, health care, employer contributions made to employees' health savings accounts, and retirement [to the extent deductible for federal income tax purposes].

*(b–1) This subsection applies to a taxable entity that is a small employer, as that term is defined by Section 1501.002, Insurance Code, and that has not provided health care benefits to any of its employees in the calendar year preceding the beginning date of its reporting period. Subject to Section 171.1014, a taxable entity to which this subsection applies that elects to subtract compensation for the purpose of computing its taxable margin under Section 171.101 may subtract health care benefits as provided under Subsection (b) and may also subtract:*

*(1) for the first 12–month period on which margin is based and in which the taxable entity provides health care benefits to all of its employees, an additional amount equal to 50 percent of the cost of health care benefits provided to its employees for that period; and*

*(2) for the second 12–month period on which margin is based and in which the taxable entity provides health care benefits to all of its employees, an additional amount equal to 25 percent of the cost of health care benefits provided to its employees for that period.*

(c) Notwithstanding the actual amount of wages and cash compensation paid by a taxable entity to its officers, directors, owners, partners, and employees, a taxable entity may not include more than $300,000, or the amount determined under Section 171.006, *per 12–month period on which margin is based,* for any person in the amount of wages and cash compensation it determines under *this section* [Section 171.101]. *If a person is paid by more than one entity of a combined group, the combined group may not subtract in relation to that person a total of more than $300,000, or the amount determined under Section 171.006, per 12–month period on which margin is based.*

SECTION 17.  Section 171.1014, Tax Code, as effective January 1, 2008, is amended by amending Subsections (b), (d), and (f) and adding Subsections (d–1), (h), and (i) to read as follows:

(b) The combined group is a single taxable entity for purposes of the application of the tax imposed under this chapter, *including Section 171.002(d).*

(d) For purposes of Section 171.101, a combined group shall make an election to subtract either cost of goods sold or compensation that applies to all of its members. *Regardless of the election, the taxable margin of the combined group may not exceed 70 percent of the combined group's total revenue from its entire business, as provided by Section 171.101(a)(1)(A).*

*(d–1) A member of a combined group may claim as cost of goods sold those costs that qualify under Section 171.1012 if the goods for which the costs are incurred are owned by another member of the combined group.*

(f) For purposes of Section 171.101, a combined group that elects to subtract compensation shall determine that amount by:

(1) determining the compensation for each of its members as provided by Section 171.1013 as if each member were an individual taxable entity, *subject to the limitation prescribed by Section 171.1013(c);*

(2) adding the amounts of compensation determined under Subdivision (1) together; and

(3) subtracting from the amount determined under Subdivision (2) any compensation amounts paid from one member of the combined group to another member of the combined group, but only to the extent the corresponding item of total revenue was subtracted under Subsection (c)(3).

*(h) Each taxable entity that is part of a combined group report shall, for purposes of determining margin and apportionment, include its activities for the same period used by the combined group.*

*(i) Each member of the combined group shall be jointly and severally liable for the tax of the combined group.*

SECTION 18.  Section 171.1015, Tax Code, as effective January 1, 2008, is amended to read as follows:

Sec. 171.1015.  REPORTING FOR CERTAIN PARTNERSHIPS IN TIERED PARTNERSHIP ARRANGEMENT.  (a) In this section, "tiered partnership arrangement" means an ownership structure in which *any* [all] of the interests in one *taxable entity treated as a*

*partnership* or [partnership, trust, or limited liability company that is treated for federal income taxes as a partnership or a limited liability company treated as] an S corporation for federal income tax purposes (*a "lower tier entity"* [an "upper tier partnership"]) are owned by one or more other taxable entities (*an "upper* [a "lower] *tier entity"*). A tiered partnership arrangement may have two or more tiers.

(b) In addition to the tax it is required to pay under this chapter on its own taxable margin, a taxable entity that is *an upper* [a lower] tier entity may *include, for purposes of calculating its own taxable margin, the total revenue* [pay the tax on the taxable margin] of a *lower tier entity* [higher tier partnership] if the *lower tier entity* [higher tier partnership] submits a report to the comptroller showing the amount of *total revenue* [taxable margin] that each *upper* [lower] tier entity that owns it should include within the *upper* [lower] tier entity's own taxable margin *calculation*, according to the *ownership* [profits] interest of the *upper* [lower] tier entity. [An upper tier partnership is not required to pay tax under this chapter on any taxable margin reported under this section.]

(c) This section does not apply to that percentage of the *total revenue* [taxable margin] attributable to *an upper* [a lower] tier entity by *a lower tier entity* [an upper tier partnership] if the *upper* [lower] tier entity is not subject to the tax under this chapter. In this case, the *lower tier entity* [higher tier partnership] is liable for the tax on its taxable margin.

(d) *Section 171.002(d) does not apply to an upper tier entity if, before the attribution of any total revenue by a lower tier entity to an upper tier entity under this section, the lower tier entity does not meet the criteria of Section 171.002(d)(1) or (d)(2).*

(e) *The comptroller shall adopt rules to administer this section.*

SECTION 19.  Subchapter A, Chapter 171, Tax Code, is amended by adding Section 171.1016 to read as follows:

*Sec. 171.1016.  E–Z COMPUTATION AND RATE.  (a) Notwithstanding any other provision of this chapter, a taxable entity whose total revenue from its entire business is not more than $10 million may elect to pay the tax imposed under this chapter in the amount computed and at the rate provided by this section rather than in the amount computed and at the tax rate provided by Section 171.002.*

*(b) The amount of the tax for which a taxable entity that elects to pay the tax as provided by this section is liable is computed by:*

*(1) determining the taxable entity's total revenue from its entire business, as determined under Section 171.1011;*

*(2) apportioning the amount computed under Subdivision (1) to this state, as provided by Section 171.106, to determine the taxable entity's apportioned total revenue; and*

*(3) multiplying the amount computed under Subdivision (2) by the rate of 0.575 percent.*

*(c) A taxable entity that elects to pay the tax as provided by this section may not take a credit, deduction, or other adjustment that is not specifically authorized by this section.*

*(d) Section 171.0021 applies to a taxable entity that elects to pay the tax as provided by this section.*

*(e) A reference in this chapter or other law to the rate of the franchise tax means, as appropriate, the rate under Section 171.002 or, for a taxable entity that elects to pay the tax as provided by this section, the rate under this section.*

SECTION 20.  Section 171.103, Tax Code, as effective January 1, 2008, is amended by adding Subsections (c) and (d) to read as follows:

*(c) A taxable entity that is a combined group shall include in a report filed under Section 171.201 or 171.202, for each member of the combined group that does not have nexus with this state for the purpose of taxation:*

*(1) the gross receipts computed under Subsection (a); and*

*(2) the gross receipts computed under Subsection (a) that are subject to taxation in another state under a throwback law or regulation.*

*(d) The information required by Subsection (c) may be used for informational purposes only. The comptroller shall adopt rules as necessary to enforce the reporting requirement prescribed by Subsection (c).*

SECTION 21.   Section 171.1055(b), Tax Code, as effective January 1, 2008, is amended to read as follows:

(b) In apportioning margin, receipts derived from transactions between individual members of a combined group that are excluded under Section 171.1014(c)(3) may not be included in the receipts of the taxable entity from its business done in this state as determined under Section 171.103, except that receipts *ultimately* derived from the sale of tangible personal property between individual members of a combined group where one member party to the transaction does not have nexus in this state shall be included in the receipts of the taxable entity from its business done in this state as determined under Section 171.103 to the extent that the member of the combined group that does not have nexus in this state resells the tangible personal property without *substantial* modification to a purchaser in this state. *"Receipts ultimately derived from the sale" means the amount paid for the tangible personal property by the third party purchaser.*

SECTION 22.   Section 171.106, Tax Code, as effective January 1, 2008, is amended by adding Subsection (f) to read as follows:

*(f) Notwithstanding Section 171.1055, if a loan or security is treated as inventory of the seller for federal income tax purposes, the gross proceeds of the sale of that loan or security are considered gross receipts.*

SECTION 23.   Section 171.111, Tax Code, as effective January 1, 2008, is amended to read as follows:

Sec. 171.111.   TEMPORARY CREDIT ON TAXABLE MARGIN.   (a) *On the first report originally due under this chapter on or after January 1, 2008,* [Not later than March 1, 2007,] a taxable entity *must* [may] notify the comptroller in writing of its intent to [preserve its right to] take a credit in an amount allowed by this section on the tax due on taxable margin.   The taxable entity may thereafter elect to claim the credit for the current year and future year at or before the original due date of any report due after January 1, *2008* [2007], until the taxable entity revokes the election or this section expires, whichever is earlier.   A taxable entity may claim the credit for not more than 20 consecutive privilege periods beginning with the first report *originally* due under this chapter *on or* after January 1, *2008* [2007].   A taxable entity may make only one election under this section and the election may not be conveyed, assigned, or transferred to another entity.

(b) The credit allowed under this section for any privilege period is computed by:

(1) determining the amount *of the business loss carryforwards of the taxable entity under Section 171.110(e), as that section applied to annual reports originally due before January 1, 2008, that were not exhausted on a report originally due under this chapter before January 1, 2008*[, as of the end of the taxable entity's accounting year ending in 2006, of the difference between (i) the taxable entity's deductible temporary differences and net operating loss carryforwards, net of related valuation allowance amounts, shown on the taxable entity's books and records on the last day of its taxable year ending in 2006, and (ii) the taxable entity's taxable temporary differences as shown on those books and records on that date.   The amount of other net deferred tax items may be less than zero.   For the purpose of computing the amount of the taxable entity's other net deferred tax items, any credit carryforward allowed under this chapter shall be excluded from the amount of deductible temporary differences to the extent such credit carryforward amount, net of any related valuation allowance amount, is otherwise included in the taxable entity's deductible temporary differences, net of related valuation allowance amounts, shown on the taxable entity's books and records on the last day of the taxable entity's taxable year ending in 2006];

(2) [apportioning the amount determined under Subdivision (1) to this state in the same manner taxable margin is apportioned under Section 171.106 on the first report due on or after January 1, 2007;

[(3)] multiplying the amount determined under Subdivision *(1)* [(2)] by*:*

*(A) 2.25* [10] percent *for reports originally due on or after January 1, 2008, and before January 1, 2018; and*

*(B) 7.75 percent for reports originally due on or after January 1, 2018, and before September 1, 2027;* and

4294

*(3)* [(4)] multiplying the amount determined under Subdivision *(2)* [(3)] by *4.5 percent* [the tax rate prescribed by Section 171.002(a)(2)].

(c) [A taxable entity that notifies the comptroller of its intent to preserve its right to take a credit allowed by this section shall submit with its notice of intent a statement of the amount determined under Subsection (b)(1).] The comptroller may request that the taxable entity submit, *with each* [in the] annual report [for each succeeding privilege period] in which the taxable entity is eligible to take a credit, information relating to the amount determined under Subsection (b)(1). The taxable entity shall submit in the form and content the comptroller requires any information relating to [the assets and liabilities that determine the amount of the credit,] the amount determined under Subsection (b)(1)[,] or any other matter relevant to the computation of the credit for which the taxable entity is eligible.

(d) A credit that a taxable entity is entitled to under this section *may* [does] not *be conveyed* [convey], [and may not be] assigned, or transferred[, in relation to a transaction in which the taxable entity is purchased by another entity]. *A taxable entity loses the right to claim the credit if the entity changes combined groups after June 30, 2007.*

*(d-1) A taxable entity, other than a combined group, may not claim the credit under this section unless the taxable entity was, on May 1, 2006, subject to the tax imposed by this chapter as this chapter existed on that date. A taxable entity that is a combined group may claim the credit for each member entity that was, on May 1, 2006, subject to the tax imposed by this chapter as this chapter existed on that date and shall compute the amount of the credit for that member as provided by this section.*

*(d-2) The amount of credit claimed, including any unused credit carried forward, may not exceed the amount of franchise tax due for the report. Unused credits may not be carried forward to reports originally due on or after September 1, 2027.*

(e) This section expires September 1, *2027* [2026].

SECTION 24. Section 171.1121(b), Tax Code, as effective January 1, 2008, is amended to read as follows:

(b) Except as otherwise provided by this section, a taxable entity shall use the same accounting methods to apportion margin as used in computing *margin* [reportable federal taxable income].

SECTION 25. Section 171.1532(b), Tax Code, as effective January 1, 2008, is amended to read as follows:

(b) The tax covering the regular annual period, other than a regular annual period included on the initial report, is based on the business done by the taxable entity during the period beginning with the day after the last date upon which taxable margin *or net taxable earned surplus* on a previous report was based and ending with its last accounting period ending date for federal income tax purposes in the year before the year in which the report is originally due.

SECTION 26. Section 171.201(a), Tax Code, as effective January 1, 2008, is amended to read as follows:

(a) Except as provided by Section 171.2022, a taxable entity on which the franchise tax is imposed shall file an initial report with the comptroller containing:

(1) *financial* information *of the taxable entity necessary to compute the tax under this chapter* [showing the financial condition of the taxable entity on the day that is the last day of a calendar month and that is nearest to the end of the taxable entity's first year of business];

(2) the name and address of:

(A) each officer, director, and manager of the taxable entity;

(B) for a limited partnership, each general partner;

(C) for a general partnership or limited liability partnership, each managing partner or, if there is not a managing partner, each partner; or

(D) for a trust, each trustee;

(3) the name and address of the agent of the taxable entity designated under Section 171.354; and

(4) other information required by the comptroller.

SECTION 27. Sections 171.203(a), (b), (d), and (e), Tax Code, as effective January 1, 2008, are amended to read as follows:

(a) A corporation *or limited liability company* on which the franchise tax is imposed, regardless of whether the corporation *or limited liability company* is required to pay any tax, shall file a report with the comptroller containing:

(1) the name of each corporation *or limited liability company* in which the corporation *or limited liability company* filing the report owns a 10 percent or greater interest and the percentage owned by the corporation *or limited liability company*;

(2) the name of each corporation *or limited liability company* that owns a 10 percent or greater interest in the corporation *or limited liability company* filing the report;

(3) the name, title, and mailing address of each person who is an officer or director of the corporation *or limited liability company* on the date the report is filed and the expiration date of each person's term as an officer or director, if any;

(4) the name and address of the agent of the corporation *or limited liability company* designated under Section 171.354; and

(5) the address of the corporation's *or limited liability company's* principal office and principal place of business.

(b) The corporation *or limited liability company* shall file the report once a year on a form prescribed by the comptroller.

(d) The corporation *or limited liability company* shall send a copy of the report to each person named in the report under Subsection (a)(3) who is not currently employed by the corporation *or limited liability company* or a related corporation *or limited liability company* listed in Subsection (a)(1) or (2). An officer or director of the corporation *or limited liability company* or another authorized person must sign the report under a certification that:

(1) all information contained in the report is true and correct to the best of the person's knowledge; and

(2) a copy of the report has been mailed to each person identified in this subsection on the date the return is filed.

(e) If a person's name is included in a report under Subsection (a)(3) and the person is not an officer or director of the corporation *or limited liability company* on the date the report is filed, the person may file with the comptroller a sworn statement disclaiming the person's status as shown on the report. The comptroller shall maintain a record of statements filed under this subsection and shall make that information available on request using the same procedures the comptroller uses for other requests for public information.

SECTION 28. Section 171.204, Tax Code, as effective January 1, 2008, is amended by adding Subsection (c) to read as follows:

*(c) The comptroller may require any entity to file information as necessary to verify that the entity is not subject to the tax imposed under this chapter.*

SECTION 29. Subchapter E, Chapter 171, Tax Code, is amended by adding Section 171.2125 to read as follows:

*Sec. 171.2125. CALCULATING COST OF GOODS OR COMPENSATION IN STAFF LEASING ARRANGEMENTS. In calculating cost of goods sold or compensation, a taxable entity that is a client company of a staff leasing services company shall rely on information provided by the staff leasing services company on a form promulgated by the comptroller or an invoice.*

SECTION 30. Subchapter E, Chapter 171, Tax Code, is amended by adding Section 171.214 to read as follows:

*Sec. 171.214. BUSINESS TAX ADVISORY COMMITTEE. (a) The Business Tax Advisory Committee is created. The committee is composed of:*

*(1) two members of the house of representatives, appointed by the speaker of the house of representatives;*

(2) *two members of the senate, appointed by the lieutenant governor; and*

(3) *the following persons appointed by the comptroller:*

(A) *at least five residents of this state who are engaged in a private business, as either an employee or an owner, that is subject to taxation under this chapter; and*

(B) *at least two residents of this state with expertise in state business taxation.*

(b) *The comptroller shall determine the number of residents appointed under Subsection (a)(3).*

(c) *The comptroller is the presiding officer of the advisory committee.*

(d) *The advisory committee shall conduct a biennial study of the effects of the tax imposed under this chapter on businesses in this state. The study must take into consideration:*

(1) *the relative share of the tax paid by industry and by size of business;*

(2) *how the incidence of the tax compares with the economic makeup of this state's business economy;*

(3) *how the tax compares in structure and in amounts paid to the business taxes imposed by other states;*

(4) *the effect of the tax on the economic climate of this state, including the effect on capital investment and job creation;*

(5) *any factors that result in the tax not operating as intended; and*

(6) *any other item presented by the comptroller or by a majority of the committee.*

(e) *The comptroller by rule shall establish procedures for the functions of the advisory committee, including procedures requiring the advisory committee to issue a report on its findings to the speaker of the house of representatives, the lieutenant governor, and the governor not later than the date each regular session of the legislature begins.*

(f) *This section expires January 31, 2013.*

SECTION 31. Subchapter G, Chapter 171, Tax Code, is amended by adding Sections 171.3015 and 171.3125 to read as follows:

*Sec. 171.3015. FORFEITURE OF CERTIFICATE OR REGISTRATION OF TAXABLE ENTITY. The comptroller may, for the same reasons and using the same procedures the comptroller uses in relation to the forfeiture of a corporation's charter or certificate of authority, forfeit the certificate or registration of a taxable entity.*

*Sec. 171.3125. REVIVAL OF CERTIFICATE OR REGISTRATION OF TAXABLE ENTITY AFTER FORFEITURE BY SECRETARY OF STATE. (a) The secretary of state may, using the same procedures the secretary uses in relation to the revival of a corporation's charter or certificate, revive the certificate or registration of a taxable entity.*

(b) *The secretary of state may adopt rules to implement this section.*

SECTION 32. Section 171.309, Tax Code, is amended to read as follows:

Sec. 171.309. FORFEITURE BY SECRETARY OF STATE. The secretary of state may forfeit the charter, [or] certificate, *or registration of a taxable entity* [of authority of a corporation] if:

(1) the secretary receives the comptroller's certification under Section 171.302 [of this code]; *and*

(2) the *taxable entity* [corporation] does not revive its forfeited [corporate] privileges within 120 days after the date that the [corporate] privileges were forfeited[; and

[(3) the corporation does not have assets from which a judgment for any tax, penalty, or court costs imposed by this chapter may be satisfied].

SECTION 33. Section 17, Chapter 1, Acts of the 79th Legislature, 3rd Called Session, 2006, is amended to read as follows:

Sec. 17. [(a) The repeal of Section 171.111, Tax Code, by this Act does not affect a credit that accrued under that section before the effective date of this Act.

[(b)] A corporation that has any unused credits *established* [accrued] before the effective date of this Act under Section 171.111, Tax Code, may claim those unused credits on or with

the tax report for the period in which the credits were *established* [accrued], and the former law under which the corporation *established* [accrued] the credits is continued in effect for purposes of determining the amount of the credits the corporation may claim and the manner in which the corporation may claim the credits.

SECTION 34. Sections 18(b) through (f), Chapter 1, Acts of the 79th Legislature, 3rd Called Session, 2006, are amended to read as follows:

(b) This section does not affect a credit authorized by a provision listed in Subsection (a) of this section that *was established* [accrued] under Chapter 171, Tax Code, before the effective date of this Act or a credit that continues to accrue under Section 19 of this Act.

(c) A corporation that has any unused credits *established* [accrued] before the effective date of this Act under a provision other than Subchapter O, P, or Q, Chapter 171, Tax Code, may claim those unused credits on or with the tax report for the period in which the credits were *established* [accrued], and the former law under which the corporation *established* [accrued] the credits is continued in effect for purposes of determining the amount of the credits the corporation may claim and the manner in which the corporation may claim the credits.

(d) A corporation that has any unused credits *established* [accrued] before the effective date of this Act under Subchapter O, Chapter 171, Tax Code, may claim those unused credits on or with the tax report for the period in which the credit was *established* [accrued]. However, if the corporation was allowed to carry forward unused credits under that subchapter, the corporation may continue to apply those credits on or with each consecutive report until the earlier of the date the credit would have expired under the terms of Subchapter O, Chapter 171, Tax Code, had it continued in existence, or December 31, 2027, and the former law under which the corporation *established* [accrued] the credits is continued in effect for purposes of determining the amount of the credits the corporation may claim and the manner in which the corporation may claim the credits.

(e) A corporation that has any unused credits *established* [accrued] before the effective date of this Act under Subchapter P, Chapter 171, Tax Code, may claim those unused credits on or with the tax report for the period in which the credit was *established* [accrued]. However, if the corporation was allowed to carry forward unused credits under that subchapter, the corporation may continue to apply those credits on or with each consecutive report until the earlier of the date the credit would have expired under the terms of Subchapter P, Chapter 171, Tax Code, had it continued in existence, or December 31, 2012, and the former law under which the corporation *established* [accrued] the credits is continued in effect for purposes of determining the amount of the credits the corporation may claim and the manner in which the corporation may claim the credits.

(f) A corporation that has any unused credits *established* [accrued] before the effective date of this Act under Subchapter Q, Chapter 171, Tax Code, may claim those unused credits on or with the tax report for the period in which the credit was *established* [accrued]. However, if the corporation was allowed to carry forward unused credits under that subchapter, the corporation may continue to apply those credits on or with each consecutive report until the earlier of the date the credit would have expired under the terms of Subchapter Q, Chapter 171, Tax Code, had it continued in existence, or December 31, 2012, and the former law under which the corporation *established* [accrued] the credits is continued in effect for purposes of determining the amount of the credits the corporation may claim and the manner in which the corporation may claim the credits.

SECTION 35. (a) Section 22, Chapter 1, Acts of the 79th Legislature, 3rd Called Session, 2006, is amended by amending Subsection (b) and adding Subsections (b–1), (b–2), and (g) to read as follows:

(b) For an entity becoming subject to the franchise tax under this Act:

(1) margin or gross receipts occurring before June 1, 2006, may not be considered for purposes of determining taxable margin or for apportionment purposes; *and*

(2) an entity subject to the franchise tax on January 1, 2008, that was not previously subject to the tax and for which January 1, 2008, is not the beginning date, shall file an annual report due May 15, 2008, based on the period:

(A) if the entity has an accounting period that ends on or after January 1, 2007, and before June 1, 2007:

(i) beginning on the later of:

(a) June 1, 2006; or

(b) the date the entity was organized in this state or, if a foreign entity, the date it began doing business in this state; and

(ii) ending on the date that accounting period ends in 2007;

(B) if the entity has an accounting period that ends on or after June 1, 2007, and before December 31, 2007:

(i) beginning on the date that accounting period begins; and

(ii) ending on the date that accounting period ends in 2007; and

(C) if the entity has an accounting period that ends on December 31, 2007, or if the entity does not have an accounting period that ends in 2007:

(i) beginning on the later of:

(a) January 1, 2007; or

(b) the date the entity was organized in the state or, if a foreign entity, the date it began doing business in this state; and

(ii) ending on December 31, 2007[; and

[(3) an entity subject to the franchise tax as it existed before the effective date of this Act at any time after December 31, 2006, and before January 1, 2008, but not subject to the franchise tax on January 1, 2008, shall file a final report for the privilege of doing business at any time after June 30, 2007, and before January 1, 2008, based on the period:

[(A) beginning on the later of:

[(i) January 1, 2007; or

[(ii) the date the entity was organized in this state or, if a foreign entity, the date it began doing business in this state; and

[(B) ending on the date the entity became no longer subject to the franchise tax].

*(b–1) This subsection applies to an entity that:*

*(1) is not doing business in this state on January 1, 2008;*

*(2) would be subject to the franchise tax as amended by this Act if it were doing business in this state on or after January 1, 2008, but would not have been subject to the franchise tax as it existed before being amended by this Act; and*

*(3) was doing business in this state at any time after June 30, 2007, and before January 1, 2008.*

*(b–2) An entity to which Subsection (b–1) applies shall, for the privilege of doing business in this state at any time after June 30, 2007, and before January 1, 2008, file a final report and pay an additional tax equal to the appropriate rate under Section 171.002, Tax Code, as amended by this Act, of the entity's taxable margin based on the period:*

*(1) beginning on the later of:*

*(A) January 1, 2007; or*

*(B) the date the entity was organized in this state or, if a foreign entity, the date it began doing business in this state; and*

*(2) ending on the date the entity became no longer subject to the tax.*

*(g) Except as provided by Subsections (b–1) and (b–2) of this section, an entity becoming subject to the franchise tax under this Act that is part of a combined group report shall, for purposes of determining margin and apportionment, include its activity for the same period used by the combined group.*

(b) This section takes effect immediately if this Act receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this section takes effect September 1, 2007.

SECTION 36. Sections 23(b) and (f), Chapter 1, Acts of the 79th Legislature, 3rd Called Session, 2006, are amended to read as follows:

(b) The information report required under this section must contain the same information that an entity required to file the report would have submitted in its report due to the comptroller in 2006 under Chapter 171, Tax Code, if the changes made by this Act to Chapter 171, Tax Code, had been in effect January 1, 2006. The information report shall also contain the total of maintenance and operations school property taxes paid by the entity to school districts in Texas in the 2005 [, 2006, and 2007] tax *year* [years]. The comptroller shall provide the forms and instructions to the entities required to file a report under this section.

(f) The comptroller:

(1) shall identify the entities described by Subsection (d) of this section;

(2) shall prepare all forms and instructions required for those entities to file their information reports as required by this section;

(3) shall provide those forms and instructions to those entities on or after November 15, 2006, but before December 2, 2006;

(4) shall require the entities to submit their information reports on or before February 15, 2007[, and February 15, 2008];

(5) may not grant any extensions for filing the information reports; and

(6) shall report to the governor, the lieutenant governor, and the members of the legislature, on or before April 1, 2007, [and April 1, 2008,] the results of the information reports, stating the amount of revenue generated by the tax under Chapter 171, Tax Code, [in each year,] the amount that would have been generated from the entities submitting information reports under this section if the changes made by this Act to Chapter 171, Tax Code, had been in effect January 1, 2006, and the school maintenance and operations property taxes paid by the entities in the 2005 [, 2006, and 2007] tax *year* [years].

SECTION 37. The following provisions of the Tax Code are repealed:

(1) Section 171.0011(e), as effective January 1, 2008;

(2) Section 171.1011(p)(4-b), as effective January 1, 2008;

(3) Section 171.1014(g), as effective January 1, 2008; and

(4) Section 171.2035, as effective January 1, 2008.

SECTION 38. This Act applies only to a report originally due on or after the effective date of this Act.

SECTION 39. The taxation method provided by Section 171.002, Tax Code, as amended by this Act, and the taxation method provided by Section 171.1016, Tax Code, as added by this Act, are not severable, and neither provision would have been enacted without the other. If the taxation method provided by Section 171.002, Tax Code, as amended by this Act, is held invalid, the taxation method provided by Section 171.1016, Tax Code, as added by this Act, is also invalid.

SECTION 40. Except as otherwise provided by this Act, this Act takes effect January 1, 2008.

Passed by the House on May 2, 2007: Yeas 138, Nays 3, 2 present, not voting; that the House refused to concur in Senate amendments to H.B. No. 3928 on May 23, 2007, and requested the appointment of a conference committee to consider the differences between the two houses; the House adopted the conference committee report on H.B. No. 3928 on May 26, 2007: Yeas 136, Nays 5, 3 present, not voting; passed by the Senate, with amendments, on May 18, 2007: Yeas 28, Nays 1; at the request of the House, the Senate appointed a conference committee to consider the differences between the two houses; the Senate adopted the conference committee report on H.B. No. 3928 on May 26, 2007: Yeas 30, Nays 0.

Approved June 15, 2007.

Effective January 1, 2008, except as provided by § 35(b).

# Appendix 2

Act of May 27, 2013, 83rd Leg., R.S., ch. 1232,
§ 10, 2013 Tex. Gen. Laws 3104, 3108

(7) Subsection (a), Section 386.252, Health and Safety Code, as amended by Chapters 589 (Senate Bill No. 20) and 892 (Senate Bill No. 385), Acts of the 82nd Legislature, Regular Session, 2011;

(8) Subsection (f), Section 386.252, Health and Safety Code, as added by Chapter 589 (Senate Bill No. 20), Acts of the 82nd Legislature, Regular Session, 2011; and

(9) Chapters 393 and 394, Health and Safety Code, as amended by Chapter 589 (Senate Bill No. 20), Acts of the 82nd Legislature, Regular Session, 2011.

SECTION 26. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2013.

Passed the Senate on May 2, 2013: Yeas 29, Nays 1, one present not voting; the Senate concurred in House amendments on May 25, 2013: Yeas 28, Nays 2, one present not voting; passed the House, with amendments, on May 21, 2013: Yeas 107, Nays 39, two present not voting.

Approved June 14, 2013.

Effective June 14, 2013.

---

# CHAPTER 1231

## H.B. No. 2984

AN ACT

relating to lobbying expenditures that are made jointly.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Section 305.0021(b), Government Code, is amended to read as follows:

(b) For purposes of Section 36.02 or 36.10, Penal Code, *a person described by Subsection (a)(2)(A) is not considered to have made an expenditure* [the amount of a joint expenditure that is attributed to a person who is not a registrant is not an expenditure made and reported] in accordance with this chapter.

SECTION 2. The amendment made by this Act to Section 305.0021(b), Government Code, is intended to clarify rather than change existing law.

SECTION 3. This Act takes effect September 1, 2013.

Passed by the House on April 25, 2013: Yeas 135, Nays 1, 2 present, not voting; passed by the Senate on May 22, 2013: Yeas 31, Nays 0.

Approved June 14, 2013.

Effective September 1, 2013.

---

# CHAPTER 1232

## H.B. No. 500

AN ACT

relating to the computation of the franchise tax, including certain exclusions from the tax.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Section 171.0001(12), Tax Code, is amended to read as follows:

(12) "Retail trade" means:

(A) the activities described in Division G of the 1987 Standard Industrial Classification Manual published by the federal Office of Management and Budget; [and]

(B) apparel rental activities classified as Industry 5999 or 7299 of the 1987 Standard Industrial Classification Manual published by the federal Office of Management and Budget;

*(C) the activities classified as Industry Group 753 of the 1987 Standard Industrial Classification Manual published by the federal Office of Management and Budget;*

*(D) rental-purchase agreement activities regulated by Chapter 92, Business & Commerce Code;*

*(E) activities involving the rental or leasing of tools, party and event supplies, and furniture that are classified as Industry 7359 of the 1987 Standard Industrial Classification Manual published by the federal Office of Management and Budget; and*

*(F) heavy construction equipment rental or leasing activities classified as Industry 7353 of the 1987 Standard Industrial Classification Manual published by the federal Office of Management and Budget.*

SECTION 2. Subchapter A, Chapter 171, Tax Code, is amended by adding Sections 171.0022 and 171.0023 to read as follows:

*Sec. 171.0022. TEMPORARY PERMISSIVE ALTERNATE RATES FOR 2014. (a) Notwithstanding Section 171.002(a) and subject to Section 171.1016 and Subsection (b) of this section, a taxable entity may elect to pay the tax imposed under this chapter at a rate of 0.975 percent of taxable margin.*

*(b) Notwithstanding Section 171.002(b) and subject to Section 171.1016, a taxable entity primarily engaged in retail or wholesale trade as defined by Sections 171.002(c) and (c-1) may elect to pay the tax imposed under this chapter at a rate of 0.4875 percent of taxable margin.*

*(c) This section applies only to a report originally due on or after January 1, 2014, and before January 1, 2015.*

*(d) This section expires December 31, 2014.*

*Sec. 171.0023. TEMPORARY PERMISSIVE ALTERNATE RATES FOR 2015. (a) Notwithstanding Section 171.002(a) and subject to Section 171.1016 and Subsections (b) and (d) of this section, a taxable entity may elect to pay the tax imposed under this chapter at a rate of 0.95 percent of taxable margin.*

*(b) Notwithstanding Section 171.002(b) and subject to Section 171.1016 and Subsection (d) of this section, a taxable entity primarily engaged in retail or wholesale trade as defined by Sections 171.002(c) and (c-1) may elect to pay the tax imposed under this chapter at a rate of 0.475 percent of taxable margin.*

*(c) This section applies only to a report originally due on or after January 1, 2015, and before January 1, 2016.*

*(d) A taxable entity may elect to compute the tax at the rate provided by Subsection (a) or (b), as applicable, on a report specified by Subsection (c) only if the comptroller certifies, on or after September 1, 2014, that probable revenue for the state fiscal biennium ending August 31, 2015, is estimated to exceed probable revenue as stated in the comptroller's Biennial Revenue Estimate for the 2014–2015 fiscal biennium, as adjusted for estimates of revenue and disbursements associated with legislation enacted by the 83rd Legislature, including any contingent appropriations certified before September 1, 2014, by an amount sufficient to offset the loss in probable revenue that will result if taxable entities elect to compute the tax at the rates provided by Subsections (a) and (b). If the comptroller does not make the certification described by this subsection, a taxable entity may not elect to pay the tax at the rate provided by Subsection (a) or (b) and shall pay the tax at the rates provided by Section 171.002.*

*(e) This section expires December 31, 2015.*

SECTION 3. Section 171.006(b), Tax Code, is amended to read as follows:

(b) Beginning in 2010, on January 1 of each even-numbered year, the amounts prescribed by Sections 171.002(d)(2) [, 171.0021,] and 171.1013(c) are increased or decreased by an amount equal to the amount prescribed by those sections on December 31 of the preceding

year multiplied by the percentage increase or decrease during the preceding state fiscal biennium in the consumer price index and rounded to the nearest $10,000.

SECTION 4.  Section 171.052(a), Tax Code, is amended to read as follows:

(a) Except as provided by Subsection (c), an insurance organization, title insurance company, or title insurance agent authorized to engage in insurance business in this state *that is* [now] required to pay an annual tax [under Chapter 4 or 9, Insurance Code,] measured by its gross premium receipts is exempted from the franchise tax.  A nonadmitted insurance organization that is required to pay a gross premium receipts tax during a tax year is exempted from the franchise tax for that same tax year.  *A nonadmitted insurance organization that is subject to an occupation tax or any other tax that is imposed for the privilege of doing business in another state or a foreign jurisdiction, including a tax on gross premium receipts, is exempted from the franchise tax.*

SECTION 5.  Subchapter B, Chapter 171, Tax Code, is amended by adding Section 171.086 to read as follows:

*Sec. 171.086.  EXEMPTION: POLITICAL SUBDIVISION CORPORATION.  A political subdivision corporation formed under Section 304.001, Local Government Code, is exempted from the franchise tax.*

SECTION 6.  Sections 171.101(a) and (b), Tax Code, are amended to read as follows:

(a) The taxable margin of a taxable entity is computed by:

(1) determining the taxable entity's margin, which is the lesser of:

(A) *the amount provided by this paragraph, which is the lesser of:*

*(i)* 70 percent of the taxable entity's total revenue from its entire business, as determined under Section 171.1011; or

*(ii) an amount equal to the taxable entity's total revenue from its entire business as determined under Section 171.1011 minus $1 million; or*

(B) an amount computed by[;

[(i)] determining the taxable entity's total revenue from its entire business[,] under Section 171.1011 *and* [;

[(ii)] subtracting *the greater of:*

*(i) $1 million; or*

*(ii) an amount equal to the sum of:*

*(a)* [,] at the election of the taxable entity, either:

*(1)* [(a)] cost of goods sold, as determined under Section 171.1012;  or

*(2)* [(b)] compensation, as determined under Section 171.1013;  and

*(b) any* [(iii) subtracting, in addition to any subtractions made under Subparagraph (ii)(a) or (b),] compensation, as determined under Section 171.1013, paid to an individual during the period the individual is serving on active duty as a member of the armed forces of the United States if the individual is a resident of this state at the time the individual is ordered to active duty and the cost of training a replacement for the individual;

(2) apportioning the taxable entity's margin to this state as provided by Section 171.106 to determine the taxable entity's apportioned margin;  and

(3) subtracting from the amount computed under Subdivision (2) any other allowable deductions to determine the taxable entity's taxable margin.

(b) Notwithstanding Subsection *(a)(1)(B)(ii)(a)* [(a)(1)(B)(ii)], a staff leasing services company may subtract only *the greater of $1 million as provided by Subsection (a)(1)(B)(i) or* compensation as determined under Section 171.1013.

SECTION 7.  Section 171.1011, Tax Code, is amended by amending Subsection (g–4) and adding Subsections (g–8), (g–10), (g–11), (u), (v), and (x) to read as follows:

(g–4) A taxable entity that is a pharmacy cooperative shall exclude from its total revenue, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3), flow-through funds from rebates from pharmacy wholesalers that are distributed to the pharmacy cooperative's

shareholders. *A taxable entity that provides a pharmacy network shall exclude from its total revenue, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3), reimbursements, pursuant to contractual agreements, for payments to pharmacies in the pharmacy network.*

*(g–8) A taxable entity that is primarily engaged in the business of transporting aggregates shall exclude from its total revenue, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3), subcontracting payments made by the taxable entity to independent contractors for the performance of delivery services on behalf of the taxable entity. In this subsection, "aggregates" means any commonly recognized construction material removed or extracted from the earth, including dimension stone, crushed and broken limestone, crushed and broken granite, other crushed and broken stone, construction sand and gravel, industrial sand, dirt, soil, cementitious material, and caliche.*

*(g–10) A taxable entity that is primarily engaged in the business of transporting barite shall exclude from its total revenue, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3), subcontracting payments made by the taxable entity to nonemployee agents for the performance of transportation services on behalf of the taxable entity. For purposes of this subsection, "barite" means barium sulfate (BaSO4), a mineral used as a weighing agent in oil and gas exploration.*

*(g–11) A taxable entity that is primarily engaged in the business of performing landman services shall exclude from its total revenue, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3), subcontracting payments made by the taxable entity to nonemployees for the performance of landman services on behalf of the taxable entity. In this subsection, "landman services" means:*

*(1) performing title searches for the purpose of determining ownership of or curing title defects related to oil, gas, or other related mineral or petroleum interests;*

*(2) negotiating the acquisition or divestiture of mineral rights for the purpose of the exploration, development, or production of oil, gas, or other related mineral or petroleum interests; or*

*(3) negotiating or managing the negotiation of contracts or other agreements related to the ownership of mineral interests for the exploration, exploitation, disposition, development, or production of oil, gas, or other related mineral or petroleum interests.*

*(u) A taxable entity shall exclude from its total revenue the actual cost paid by the taxable entity for a vaccine.*

*(v) A taxable entity primarily engaged in the business of transporting goods by waterways that does not subtract cost of goods sold in computing its taxable margin shall exclude from its total revenue direct costs of providing transportation services by intrastate or interstate waterways to the same extent that a taxable entity that sells in the ordinary course of business real or tangible personal property would be authorized by Section 171.1012 to subtract those costs as costs of goods sold in computing its taxable margin, notwithstanding Section 171.1012(e)(3).*

*(x) A taxable entity that is registered as a motor carrier under Chapter 643, Transportation Code, shall exclude from its total revenue, to the extent included under Subsection (c)(1)(A), (c)(2)(A), or (c)(3), flow-through revenue derived from taxes and fees.*

SECTION 8.   Section 171.1011(p), Tax Code, is amended by adding Subdivision (8) to read as follows:

*(8) "Vaccine" means a preparation or suspension of dead, live attenuated, or live fully virulent viruses or bacteria, or of antigenic proteins derived from them, used to prevent, ameliorate, or treat an infectious disease.*

SECTION 9.   Section 171.1012, Tax Code, is amended by adding Subsections (k–2) and (k–3) to read as follows:

*(k–2) This subsection applies only to a pipeline entity: (1) that owns or leases and operates the pipeline by which the product is transported for others and only to that portion of the product to which the entity does not own title; and (2) that is primarily engaged in gathering, storing, transporting, or processing crude oil, including finished petroleum products, natural gas, condensate, and natural gas liquids, except for a refinery installation*

*that manufactures finished petroleum products from crude oil. Notwithstanding Subsection (e)(3) or (i), a pipeline entity providing services for others related to the product that the pipeline does not own and to which this subsection applies may subtract as a cost of goods sold its depreciation, operations, and maintenance costs allowed by this section related to the services provided.*

*(k-3) For purposes of Subsection (k-2), "processing" means the physical or mechanical removal, separation, or treatment of crude oil, including finished petroleum products, natural gas, condensate, and natural gas liquids after those materials are produced from the earth. The term does not include the chemical or biological transformation of those materials.*

SECTION 10.   (a) Section 171.1012, Tax Code, is amended by adding Subsection (t) to read as follows:

*(t) If a taxable entity that is a movie theater elects to subtract cost of goods sold, the cost of goods sold for the taxable entity shall be the costs described by this section in relation to the acquisition, production, exhibition, or use of a film or motion picture, including expenses for the right to use the film or motion picture.*

(b) Section 171.1012(t), Tax Code, as added by this section, is a clarification of existing law and does not imply that existing law may be construed as inconsistent with the law as amended by this section.

(c) This section takes effect September 1, 2013.

SECTION 11.   Section 171.1014, Tax Code, is amended by amending Subsection (d) and adding Subsection (j) to read as follows:

(d)  For purposes of Section 171.101, a combined group shall make an election to subtract either cost of goods sold or compensation that applies to all of its members, *or $1 million*. Regardless of the election, the taxable margin of the combined group may not exceed *the* amount [70 percent of the combined group's total revenue from its entire business, as] provided by Section 171.101(a)(1)(A) *for the combined group.*

*(j) Notwithstanding any other provision of this section, a taxable entity that provides retail or wholesale electric utilities may not be included as a member of a combined group that includes one or more taxable entities that do not provide retail or wholesale electric utilities if that combined group in the absence of this subsection:*

*(1) would not meet the requirements of Section 171.002(c) solely because one or more members of the combined group provide retail or wholesale electric utilities; and*

*(2) would have less than five percent of the combined group's total revenue derived from providing retail or wholesale electric utilities.*

SECTION 12.   Section 171.106, Tax Code, is amended by adding Subsection (g) to read as follows:

*(g) A receipt from Internet hosting as defined by Section 151.108(a) is a receipt from business done in this state only if the customer to whom the service is provided is located in this state.*

SECTION 13.   (a) Subchapter C, Chapter 171, Tax Code, is amended by adding Section 171.109 to read as follows:

*Sec. 171.109.   DEDUCTION OF RELOCATION COSTS BY CERTAIN TAXABLE EN-TITIES FROM MARGIN APPORTIONED TO THIS STATE.   (a) In this section, "reloca-tion costs" means the costs incurred by a taxable entity to relocate the taxable entity's main office or other principal place of business from one location to another. The term includes:*

*(1) costs of relocating computers and peripherals, other business supplies, furniture, and inventory; and*

*(2) any other costs related to the relocation that are allowable deductions for federal income tax purposes.*

*(b) Subject to Subsection (c), a taxable entity may deduct from its apportioned margin relocation costs incurred in relocating the taxable entity's main office or other principal place of business to this state from another state if the taxable entity:*

*(1) did not do business in this state before relocating the taxable entity's main office or other principal place of business to this state; and*

*(2) is not a member of an affiliated group engaged in a unitary business, another member of which is doing business in this state on the date the taxable entity relocates the taxable entity's main office or other principal place of business to this state.*

*(c) A taxable entity must take the deduction authorized by Subsection (b) on the report based on the taxable entity's initial period described by Section 171.151(1).*

*(d) On the comptroller's request, a taxable entity that takes a deduction authorized by this section shall file with the comptroller proof of the deducted relocation costs.*

(b) The change in law made by this section applies only to a taxable entity that relocates the taxable entity's main office or other principal place of business to this state on or after the effective date of this section.

(c) This section takes effect September 1, 2013.

SECTION 14.    (a) Chapter 171, Tax Code, is amended by adding Subchapter S to read as follows:

*SUBCHAPTER S.   TAX CREDIT FOR CERTIFIED REHABILITATION OF CERTIFIED HISTORIC STRUCTURES*

*Sec. 171.901.   DEFINITIONS.   In this subchapter:*

*(1) "Certified historic structure" means a property in this state that is:*

*(A) listed individually in the National Register of Historic Places;*

*(B) designated as a Recorded Texas Historic Landmark under Section 442.006, Government Code, or as a state archeological landmark under Chapter 191, Natural Resources Code; or*

*(C) certified by the commission as contributing to the historic significance of:*

*(i) a historic district listed in the National Register of Historic Places; or*

*(ii) a local district certified by the United States Department of the Interior in accordance with 36 C.F.R. Section 67.9.*

*(2) "Certified rehabilitation" means the rehabilitation of a certified historic structure that the commission has certified as meeting the United States secretary of the interior's Standards for Rehabilitation as defined in 36 C.F.R. Section 67.7.*

*(3) "Commission" means the Texas Historical Commission.*

*(4) "Eligible costs and expenses" means qualified rehabilitation expenditures as defined by Section 47(c)(2), Internal Revenue Code.*

*Sec. 171.902.   ELIGIBILITY FOR CREDIT.   An entity is eligible to apply for a credit in the amount and under the conditions and limitations provided by this subchapter against the tax imposed under this chapter.*

*Sec. 171.903.   QUALIFICATION.   An entity is eligible for a credit for eligible costs and expenses incurred in the certified rehabilitation of a certified historic structure as provided by this subchapter if:*

*(1) the rehabilitated certified historic structure is placed in service on or after September 1, 2013;*

*(2) the entity has an ownership interest in the certified historic structure in the year during which the structure is placed in service after the rehabilitation; and*

*(3) the total amount of the eligible costs and expenses incurred exceeds $5,000.*

*Sec. 171.904.   CERTIFICATION OF ELIGIBILITY.   (a) Before claiming, selling, or assigning a credit under this subchapter, the entity that incurred the eligible costs and expenses in the rehabilitation of a certified historic structure must request from the commission a certificate of eligibility on which the commission certifies that the work performed meets the definition of a certified rehabilitation.   The entity must include with the entity's request:*

3109

(1) *information on the property that is sufficient for the commission to determine whether the property meets the definition of a certified historic structure; and*

(2) *information on the rehabilitation, and photographs before and after work is performed, sufficient for the commission to determine whether the rehabilitation meets the United States secretary of the interior's Standards for Rehabilitation as defined in 36 C.F.R. Section 67.7.*

(b) *The commission shall issue a certificate of eligibility to an entity that has incurred eligible costs and expenses as provided by this subchapter. The certificate must:*

(1) *confirm that:*

(A) *the property to which the eligible costs and expenses relate is a certified historic structure; and*

(B) *the rehabilitation qualifies as a certified rehabilitation; and*

(2) *specify the date the certified historic structure was first placed in service after the rehabilitation.*

(c) *The entity must forward the certificate of eligibility and the following documentation to the comptroller to claim the tax credit:*

(1) *an audited cost report issued by a certified public accountant, as defined by Section 901.002, Occupations Code, that itemizes the eligible costs and expenses incurred in the certified rehabilitation of the certified historic structure by the entity;*

(2) *the date the certified historic structure was first placed in service after the rehabilitation and evidence of that placement in service; and*

(3) *an attestation of the total eligible costs and expenses incurred by the entity on the rehabilitation of the certified historic structure.*

(d) *For purposes of approving the tax credit under Subsection (c), the comptroller may rely on the audited cost report provided by the entity that requested the tax credit.*

(e) *An entity that sells or assigns a credit under this subchapter to another entity shall provide a copy of the certificate of eligibility, together with the audited cost report, to the purchaser or assignee.*

*Sec. 171.905. AMOUNT OF CREDIT; LIMITATIONS. (a) The total amount of the credit under this subchapter with respect to the rehabilitation of a single certified historic structure that may be claimed may not exceed 25 percent of the total eligible costs and expenses incurred in the certified rehabilitation of the certified historic structure.*

(b) *The total credit claimed for a report, including the amount of any carryforward under Section 171.906, may not exceed the amount of franchise tax due for the report after any other applicable tax credits.*

(c) *Eligible costs and expenses may only be counted once in determining the amount of the tax credit available, and more than one entity may not claim a credit for the same eligible costs and expenses.*

*Sec. 171.906. CARRYFORWARD. (a) If an entity is eligible for a credit that exceeds the limitation under Section 171.905(b), the entity may carry the unused credit forward for not more than five consecutive reports.*

(b) *A carryforward is considered the remaining portion of a credit that cannot be claimed in the current year because of the limitation under Section 171.905(b).*

*Sec. 171.907. APPLICATION FOR CREDIT. (a) An entity must apply for a credit under this subchapter on or with the report for the period for which the credit is claimed.*

(b) *An entity shall file with any report on which the credit is claimed a copy of the certificate of eligibility issued by the commission under Section 171.904 and any other information required by the comptroller to sufficiently demonstrate that the entity is eligible for the credit.*

(c) *The burden of establishing eligibility for and the value of the credit is on the entity.*

*Sec. 171.908. SALE OR ASSIGNMENT OF CREDIT. (a) An entity that incurs eligible costs and expenses may sell or assign all or part of the credit that may be claimed for those costs and expenses to one or more entities, and any entity to which all or part of the credit is*

sold or assigned may sell or assign all or part of the credit to another entity. There is no limit on the total number of transactions for the sale or assignment of all or part of the total credit authorized under this subchapter, however, collectively all transfers are subject to the maximum total limits provided by Section 171.905.

(b) An entity that sells or assigns a credit under this section and the entity to which the credit is sold or assigned shall jointly submit written notice of the sale or assignment to the comptroller on a form promulgated by the comptroller not later than the 30th day after the date of the sale or assignment. The notice must include:

(1) the date of the sale or assignment;

(2) the amount of the credit sold or assigned;

(3) the names and federal tax identification numbers of the entity that sold or assigned the credit or part of the credit and the entity to which the credit or part of the credit was sold or assigned; and

(4) the amount of the credit owned by the selling or assigning entity before the sale or assignment, and the amount the selling or assigning entity retained, if any, after the sale or assignment.

(c) The sale or assignment of a credit in accordance with this section does not extend the period for which a credit may be carried forward and does not increase the total amount of the credit that may be claimed. After an entity claims a credit for eligible costs and expenses, another entity may not use the same costs and expenses as the basis for claiming a credit.

(d) Notwithstanding the requirements of this subchapter, a credit earned or purchased by, or assigned to, a partnership, limited liability company, S corporation, or other pass-through entity may be allocated to the partners, members, or shareholders of that entity and claimed under this subchapter in accordance with the provisions of any agreement among the partners, members, or shareholders and without regard to the ownership interest of the partners, members, or shareholders in the rehabilitated certified historic structure, provided that the entity that claims the credit must be subject to the tax imposed under this chapter.

Sec. 171.909. RULES. The commission and the comptroller shall adopt rules necessary to implement this subchapter.

(b) This section takes effect January 1, 2015.

SECTION 15. Sections 171.0021, 171.1016(d), and 171.103(c) and (d), Tax Code, are repealed.

SECTION 16. Section 1(c), Chapter 286 (H.B. 4765), Acts of the 81st Legislature, Regular Session, 2009, as amended by Section 37.01, Chapter 4 (S.B. 1), Acts of the 82nd Legislature, 1st Called Session, 2011, is repealed.

SECTION 17. Section 2, Chapter 286 (H.B. 4765), Acts of the 81st Legislature, Regular Session, 2009, as amended by Section 37.02, Chapter 4 (S.B. 1), Acts of the 82nd Legislature, 1st Called Session, 2011, and which amended former Subsection (d), Section 171.002, Tax Code, is repealed.

SECTION 18. Section 3, Chapter 286 (H.B. 4765), Acts of the 81st Legislature, Regular Session, 2009, as amended by Section 37.03, Chapter 4 (S.B. 1), Acts of the 82nd Legislature, 1st Called Session, 2011, and which amended former Subsection (a), Section 171.0021, Tax Code, is repealed.

SECTION 19. This Act applies only to a report originally due on or after the effective date of this Act.

SECTION 20. Except as otherwise provided by this Act, this Act takes effect January 1, 2014.

Passed by the House on May 8, 2013: Yeas 117, Nays 24, 7 present, not voting; the House refused to concur in Senate amendments to H.B. No. 500 on May 24, 2013, and requested the appointment of a conference committee to consider the differences between the two houses; the House adopted the conference committee report on H.B. No. 500 on May 26, 2013: Yeas 131, Nays 14, 1 present, not voting; the House adopted H.C.R. No. 221 authorizing certain corrections in H.B. No. 500 on

May 27, 2013: Yeas 145, Nays 3, 2 present, not voting; passed by the Senate, with amendments, on May 21, 2013: Yeas 31, Nays 0; at the request of the House, the Senate appointed a conference committee to consider the differences between the two houses; the Senate adopted the conference committee report on H.B. No. 500 on May 26, 2013: Yeas 27, Nays 4; the Senate adopted H.C.R. No. 221 authorizing certain corrections in H.B. No. 500 on May 27, 2013: Yeas 31, Nays 0.

Approved June 14, 2013.

Effective January 1, 2014, except as otherwise provided by this Act.

---

## CHAPTER 1233

## S.B. No. 1729

### AN ACT

relating to an agreement between the Department of Public Safety and a county for the provision of renewal and duplicate driver's license and other identification certificate services; authorizing a fee.

*Be it enacted by the Legislature of the State of Texas:*

SECTION 1. Subchapter A, Chapter 521, Transportation Code, is amended by adding Section 521.008 to read as follows:

*Sec. 521.008. PILOT PROGRAM REGARDING THE PROVISION OF RENEWAL AND DUPLICATE DRIVER'S LICENSE AND OTHER IDENTIFICATION CERTIFI-CATE SERVICES. (a) The department may establish a pilot program for the provision of renewal and duplicate driver's license, election identification certificate, and personal identification certificate services in:*

*(1) not more than three counties with a population of 50,000 or less;*

*(2) not more than three counties with a population of more than 50,000 but less than 1,000,001;*

*(3) not more than two counties with a population of more than one million; and*

*(4) notwithstanding Subdivisions (1)–(3), any county in which the department operates a driver's license office as a scheduled or mobile office.*

*(a–1) Under the pilot program, the department may enter into an agreement with the commissioners court of a county to permit county employees to provide services at a county office relating to the issuance of renewal and duplicate driver's licenses, election identification certificates, and personal identification certificates, including:*

*(1) taking photographs;*

*(2) administering vision tests;*

*(3) updating a driver's license, election identification certificate, or personal identification certificate to change a name, address, or photograph;*

*(4) distributing and collecting information relating to donations under Section 521.401;*

*(5) collecting fees; and*

*(6) performing other basic ministerial functions and tasks necessary to issue renewal and duplicate driver's licenses, election identification certificates, and personal identification certificates.*

*(b) An agreement under Subsection (a–1) may not include training to administer an examination for driver's license applicants under Subchapter H.*

*(c) A participating county must remit to the department for deposit as required by this chapter fees collected for the issuance of a renewal or duplicate driver's license or personal identification certificate.*

*(d) The commissioners court of a county may provide services through any consenting county office. A county office may decline or consent to provide services under this section by providing written notice to the commissioners court.*